562 So.2d 1105 (1990)
STATE of Louisiana
v.
James BERRYHILL.
No. 89-KA-1502.
Court of Appeal of Louisiana, Fourth Circuit.
May 31, 1990.
*1106 Harry F. Connick, Dist. Atty., Val M. Solino, Asst. Dist. Atty., New Orleans, for plaintiff/appellee.
*1107 Dwight Doskey, Clyde Merritt, Orleans Indigent Defender Program, New Orleans, for defendant/appellant.
Before CIACCIO, WILLIAMS and PLOTKIN, JJ.
CIACCIO, Judge.
Defendant, James Berryhill, was charged by bill of information with second degree murder. LSA-R.S. 14:30.1. Defendant pled not guilty and his first trial ended in a mistrial. Subsequently, a twelve person jury found him guilty of manslaughter. LSA-R.S. 14:31. The trial judge sentenced defendant to serve twenty-one years at hard labor and ordered him to pay $159.00 in court costs or to serve an additional thirty days in jail in lieu of payment of the fine. Defendant appeals his conviction and sentence.

FACTS:
Shortly after midnight on May 27, 1988, Brian Santacruz was shot in the chest and back while sitting in his car in the 3000 block of Benefit Street. He later died of the gun shot wounds at Charity Hospital.
The morning of the shooting Santacruz was sitting in his car with Darlene Belton and her two-year old daughter, Shantika. Darlene had lived with the defendant for three years and Shantika was his child. However, two weeks before the incident Darlene and Shantika moved from the apartment they shared with the defendant and went to live with her family on Benefit Street. Allegedly, Darlene left because defendant hit her during an argument.
Santacruz had met Darlene at the fast food restaurant where she had worked. Sometime before midnight on the morning of the shooting, Santacruz called Darlene at her mother's home and told her he would come by to visit her that night. Before Santacruz arrived, the defendant called and asked to speak to Darlene. When Darlene refused to speak to him, the defendant told Darlene's sister, Kim, that Shantika, who had been with his mother, would be returned to Darlene that night.
When Santacruz arrived at the Belton family home, he and Darlene talked on the front porch. The defendant's brother and his friend came by, gave Shantika to Darlene and left. Darlene, Shantika and Santacruz then went down the street to Santacruz's car. Santacruz sat in the driver's seat and Darlene sat in the front passenger seat with the child on her lap. They talked in the car for nearly thirty minutes when the defendant appeared standing outside the passenger side of the car. The defendant asked where they were going and Darlene replied nowhere. As she was getting out of the car and while looking in the defendant's face she heard gunshots. Darlene turned around and saw that Santacruz had been shot. The defendant then disappeared. Darlene ran to her mother's house, gave the baby to Kim, told her to call the police and returned to the car. She later accompanied Santacruz to the hospital.
When the police arrived at the scene, Darlene named the defendant as the perpetrator. No weapons were found, but a pellet was found on the curb directly behind the car on the passenger side. The police later went to the defendant's mother's home and to his apartment in an attempt to find him but were unsuccessful. After learning the police were looking for him in connection with the murder, the defendant turned himself in at Central Lockup.

ASSIGNMENT OF ERROR
On appeal defendant raises three assignments of error. By his first assignment, defendant contends the trial court erred by allowing the State to question a defense character witness, George Rayfield, as to an event that was not within Rayfield's knowledge and which constituted an offense for which the defendant had never been charged. Specifically, the defendant argues the trial judge erred in allowing the State to question Rayfield as to Darlene's allegation that defendant hit her in the face during an argument, causing her to move from their apartment.
At trial on direct examination by defense counsel, Rayfield testified that he had known the defendant for many years, knew other people who knew the defendant and *1108 that the defendant's reputation for truthfulness, peace and quiet was a good one. The prosecutor on cross-examination asked Rayfield "would it affect your opinion of Mr. Berryhill if you knew that the reason Darlene Belton left him was because he struck her in the face?" The defense objected, and the judge held a conference at the bench. At its conclusion the defense noted an exception to the court's ruling. The prosecutor then repeated the question, and Rayfield asked her to explain it. After establishing that the witness knew Darlene, the following occurred:
Q. Would it affect your opinion of Mr. Berryhill as a peaceful person?
A. Yes, he is a peaceful person.
Q. Yeah, but would it affect your opinion of him if you knew that he struck Darlene Belton and that's why she left him?
A. No.
Q. It wouldn't affect your opinion of him?
A. Wait. My opinion of him?
BY MS. COX:
No further questions.
Defendant concedes that once a defendant takes the stand, he puts his reputation for truth at issue. He contends, however, that the cross-examination of Rayfield went beyond its proper scope because it sought to impeach him on a trait not at issue, citing LSA-R.S. 15:490 and 15:491.[1] LSA-C.E. art. 404 provides in part:
C.E. art. 404 provides in part:
A. Character evidence generally. Evidence of a person's character or a trait of his character, such as a moral quality, is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:
(1) Character of accused. Evidence of a pertinent trait of his character, such as a moral quality, offered by an accused, or by the prosecution to rebut the character evidence; provided that such evidence shall be restricted to showing those moral qualities pertinent to the crime with which he is charged, and that character evidence cannot destroy conclusive evidence of guilt.
According to the authors' notes in the Handbook on Louisiana Evidence Law, Pugh, Force, Rault & Triche (1989):
(1) Because character evidence has only minimal value to prove conduct of a particular person on a particular occasion, and there are substantial risks in its use, Article 404(A) greatly limits its admissibility in this area. With the exception noted in Article 404(A)(3), character evidence is inadmissible in a civil case to prove conduct on a particular occasion. Its admissibility in criminal cases for this purpose is limited to those instances enumerated in Article 404(A)(1) and (2).
(2) When evidence of character is admissible under this Article to prove that a person acted in a particular way on a particular occasion, Article 405 specifies that the character may be proved by general reputation only. With the exception noted in Article 412 (which prohibits the reception of reputation and opinion evidence to prove character of the victim in sexual assault cases), character to prove conduct on a particular occasion may not be established by specific instances of conduct.
Art. 405 provides:
A. Reputation. Except as provided in Article 412, in all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to general reputation only. On cross-examination of the character witness, inquiry is allowable into relevant specific instances of conduct.
B. Specific instances of conduct. In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, such as in a prosecution for defamation or when there is a defense of entrapment, proof may also be made of specific instances of his conduct.
C. Foundation. Before a person may be permitted to testify to the reputation *1109 of another person, a foundation must be established that the witness is familiar with that reputation.
With exception provided in Art. 405(B), character may not be established by proof of specific instances. Nevertheless, to test the credibility of a character witness, his knowledge of specific instances may be gone into on cross-examination.
To protect a defendant against unfair prejudice that might otherwise occur, the Louisiana Supreme Court set forth safeguards adopted from the Superior Court of New Jersey in State v. Johnson, 389 So.2d 372 (La.1980). The court in Johnson stated:
In determining whether to allow the cross-examination, the trial court should conduct a preliminary inquiry out of the presence of the jury and he should satisfy himself:
"(1) that there is no question as to the fact of the subject matter of the rumor, that is, of the previous arrest, conviction, or other pertinent misconduct of the defendant;
"(2) that a reasonable likelihood exists that the previous arrest, conviction or other pertinent misconduct would have been bruited about the neighborhood or community prior to the alleged commission of the offense on trial;
"(3) that neither the event or conduct nor the rumor concerning it occurred at a time too remote from the present offense;
"(4) that the earlier event or misconduct and the rumor concerned the specific trait involved in the offense for which the accused is on trial; and
"(5) that the examination will be conducted in the proper form, that is: `Have you heard,' etc., not `Do you know,' etc. [citations omitted]

id at 376.
In the present case, the record does not demonstrate with certainty that the trial court considered the Johnson criteria. When the prosecutor questioned Rayfield, defense counsel objected, and an untranscribed bench conference was held with the jury present in the courtroom.
Defendant argues a full Johnson hearing insures that no reversible error results when a character witness is questioned on cross-examination regarding specific instances of the accused's conduct. Nonetheless, a trial court's failure to comply with Johnson guidelines will not automatically result in reversible error. See State v. Rault, 445 So.2d 1203 (La.1984), cert. denied. Rault v. Louisiana, 469 U.S. 873, 105 S.Ct. 225, 83 L.Ed.2d 154 (1984).
The main evidence against the defendant in this case was the eyewitness testimony of Darlene Belton. The defense produced several family witnesses whose testimony sought to show the defendant could not have committed the murder. The incident which the prosecutor questioned Rayfield about, the alleged hitting of Darlene, established a reason why Darlene would have been enraged at the defendant and supported more a finding that Darlene was not telling the truth rather than a finding that the defendant was not a peaceful, quiet person. As such, we do not find the State's question to Rayfield unduly prejudiced the defendant by contributing to the jury's verdict. LSA-C.Cr.P. art. 921; State v. Banks, 439 So.2d 407 (La.1983). We therefore conclude the trial court did not commit reversible error by allowing the State to ask the question without first conducting a Johnson hearing. This assignment is without merit.
As his second assignment of error, defendant argues the trial court erred by allowing the State to bolster Darlene Belton's credibility by asking defense character witness, Anna Barahona, questions concerning Darlene's reputation for peacefulness.[2]
On the cross-examination of Barahona the following occurred:

*1110 Q. During the time that you saw Darlene Belton, was she ever anything but peaceful?
BY MR. MERRITT:
Your Honor, that's Darlene'sher reputation for peace and quiet is not at issue at this time.
BY THE COURT:
It's overruled.
BY MR. MERRITT:
It's not a character witness for Darlene Belton. I object to the question.
BY THE COURT:
It's overruled.
BY MR. MERRITT:
Note an exception to the Court's ruling.
LSA-C.E. art. 608 provides in part:
A. Reputation evidence of character. The credibility of a witness may be attacked or supported by evidence in the form of general reputation only, but subject to these limitations:
(1) The evidence may refer only to character for truthfulness or untruthfulness.
(2) A foundation must first be established that the character witness is familiar with the reputation of the witness whose credibility is in issue. The character witness shall not express his personal opinion as to the character of the witness whose credibility is in issue.
(3) Inquiry into specific acts on direct examination while qualifying the character witness or otherwise is prohibited.
Because Darlene was neither the accused nor the victim, the State should have only questioned Barahona about Darlene's reputation for truthfulness. In addition, the record reflects the State failed to lay the proper foundation for Barahona's knowledge of Darlene's reputation. Although we find the trial court erred by allowing such testimony, we do not find the error so substantially affected the rights of the accused as to warrant a reversal of his conviction. LSA-C.Cr.P. art. 921; State v. Banks, supra. Defendant's second assignment of error is without merit.
As his third assignment of error, the defendant contends the trial court erred in allowing Darlene to testify that she had moved from the couple's apartment because he had hit her, arguing such testimony is inadmissible evidence of another offense.
After the defense presented its case, the state called Darlene as a rebuttal witness. Her testimony went as follows:
Q. Alright. Why did you move out?
BY MR. MERRITT:
It's already been in the record, Your Honor.
BY THE COURT:
It's overruled.
BY MR. MERRITT:
Note an exception to the Court's ruling.
EXAMINATION BY MS. BALDWIN:
Q. Miss Belton, why did you move out and move away from James Berryhill?
A. Because we got into a little fight.
Q. What happened?
A. We fussed. He hit me. I left.
Q. Is that the only time he hit you?
A. Yes.
Defendant now contends that the introduction of this testimony was inadmissible evidence of other crimes. However, as the preceding excerpt from the trial transcript shows that this was not the basis of defendant's objection raised at trial, a new basis for an objection cannot be raised for the first time on appeal. State v. Cashen, 544 So.2d 1268 (La.App. 4th Cir.1989). This assignment is without merit.
As his last assignment of error, defendant argues the trial court erred in imposing an excessive sentence. The trial court sentenced defendant to twenty-one years at hard labor, the maximum sentence allowed by statute.
Article I, Section 20 of the 1974 Louisiana Constitution prohibits the imposition of excessive punishment. A sentence may be reviewed for excessiveness even though it is within statutory limits. State v. Cann, 471 So.2d 701 (La.1985); State v. Bell, 543 So.2d 965 (La.App. 4th Cir.1989). The imposition of a sentence, although within the statutory limit, may be unconstitutionally *1111 excessive if it is "grossly out of proportion to the severity of the crime" or "is nothing more than the purposeless imposition of pain and suffering." State v. Brogdon, 457 So.2d 616, 625 (La.1984), cert. den. Brogdon v. Louisiana, 471 U.S. 1111, 105 S.Ct. 2345, 85 L.Ed.2d 862 (1985). In order to insure adequate review by the appellate court, there must be an indication in the record that the trial court considered both the aggravating and mitigating factors set forth in LSA-C.Cr.P. art. 894.1 in determining the defendant's particular sentence. State v. Bell, supra.
The trial court record reflects that after taking statements from the victim's parents and hearing arguments from the State and the defense attorney, the trial court enumerated both the mitigating and aggravating factors of art. 894.1.
Once the reviewing court finds adequate compliance with art. 894.1, it must then look to the facts and sentences of other cases to determine whether the sentence imposed is too severe in light of the particular circumstances of the appellant's case, keeping in mind that the maximum sentences should be reserved for the most egregious violators of the offense so charged. State v. Bell, supra.
In State v. Warren, 536 So.2d 529 (La. App. 1st Cir.1988), the defendant and the victim engaged in a scuffle. The defendant pulled a gun and the victim fled. The defendant chased the victim across a street, firing twice and hitting the victim in the leg with the second shot. As the victim was lying on the ground, the defendant stood over him and shot three to five more times, killing him. The defendant was charged with second degree murder, was found guilty of manslaughter, and was sentenced to serve twenty-one years, plus an additional two years under R.S. 14:95.2.[3] The Court upheld the defendant's sentence, despite his lack of prior criminal record, finding the egregious nature of the crime supported the maximum sentence. Likewise, in State v. Hahn, 526 So.2d 260 (La. App. 2d Cir.1988), writ denied 532 So.2d 150 (1988), the defendant, a first offender, was charged with second degree murder but convicted of manslaughter in the shooting death of his wife. The trial court sentenced him to the maximum of twenty-one years at hard labor and an additional two years at hard labor under 14:95.2. See also State v. Lombard, 501 So.2d 889 (La.App. 5th Cir.1987), writ denied 506 So.2d 504 (1987); and State v. Hobbs, 494 So.2d 1246 (La.App. 2d Cir.1986).
In the present case, defendant had no prior criminal record. However, he was charged with second degree murder, and the jury found him guilty of manslaughter. At the sentencing, the trial judge noted the defendant shot the victim for no apparent reason and with no provocation. The trial judge also expressed his view that the defendant lied on the witness stand when he testified he did not commit the murder. The judge opined that a lesser sentence would deprecate the seriousness of the offense.
Defendant also contends the sentence should be vacated as the judge refused to order a presentencing investigation. We disagree. Nothing in the record indicates that the defense requested such an investigation prior to the day of sentencing. Considering the circumstances of this case and after reviewing the sentencing transcript, we cannot say the trial judge abused his wide discretion in imposing the maximum sentence allowed by law. Defendant's last assignment is without merit.

ERRORS PATENT
A review of the record for errors patent reveals the trial court ordered the defendant to serve additional jail time in lieu of the payment of court costs. Although the defendant was represented by private counsel at trial, the court appointed Orleans Indigent Defender Program to represent him on appeal. An indigent defendant cannot be subjected to imprisonment for a longer period of time because he cannot pay a fine or court costs. A defendant is considered indigent for sentencing purposes if he is found to be indigent at any point in the proceedings, including *1112 while on appeal. State v. Stacker, 543 So.2d 539 (La.App. 4th Cir.1989); State v. Barnes, 496 So.2d 1056 (La.App. 4th Cir. 1986). Thus, the portion of the defendant's sentence which imposes jail time in lieu of the payment of court costs should be deleted.
For the foregoing reasons, defendant's conviction of manslaughter is affirmed. We amend defendant's sentence to delete that portion requiring him to serve an additional 30 days in jail for failure to pay court costs. Insofar as defendant's sentence requires him to serve twenty-one years at hard labor, the sentence is affirmed.
CONVICTION AFFIRMED.
SENTENCE AMENDED, AS AMENDED AFFIRMED.
PLOTKIN, J., dissents with reasons.
PLOTKIN, Judge, dissents with written reasons:
I respectfully dissent. My disagreement with my respected colleagues is over the harmful effects of three erroneous evidentiary rulings by the trial court which the majority acknowledges to be erroneous. The cumulative effect of these three rulings was prejudicial to the defendant.
The issue in the case, the guilt or innocence of the defendant, is determined solely on the basis of an identification of the defendant by one witness, Darlene Belton. Ms. Belton testified that the defendant was at the scene of the homicide. The defendant testified that he was at home. His alibi was supported by his mother and brother who testified that the mother had spoken to the defendant on the telephone at his home at the time of the murder. The jury had to balance the credibility of the witness against the credibility of the defendant. Therefore I disagree with the majority as to the cumulative consequences of these three evidentiary rulings which tended to bolster the credibility of the witness and impair that of the defendant.
The defendant assigned three alleged errors concerning the admission of evidence. In the first, the prosecution asked a defense character witness, George Rayfield, if he would change his mind about the peacefulness of the defendant if he knew that the defendant had hit Darlene Belton. The witness had no knowledge of this alleged "hitting." The defendant did put his character at issue in taking the stand. Under the Louisiana Code of Evidence, art. 404(A)(1), evidence may be introduced by the prosecution to rebut character evidence offered by the accused, but only as to moral qualities pertinent to the crime charged. Under art. 404(B)(1), evidence of other crimes, wrongs or acts is not admissible to prove character in order to show that the person acted in conformity therewith. The trial judge should have had a preliminary hearing as to the admissibility of such testimony prior to allowing cross-examination of the character witness, but did not. State v. Johnson, 389 So.2d 372, 376 (La. 1980). Thus the admission of this evidence was erroneous.
The majority wrote that "to test the credibility of a character witness, his knowledge of specific instances may be gone into on cross-examination." There is no authority in law for this statement. LSA-C.E. art. 405(A) allows cross examination only as to "relevant" specific instances of conduct. Article 405(B) allows testimony as to specific instances of conduct only when the "character or a trait of character of a person is an essential element of a charge, claim or defense." Contrary to the view of the majority, the question to Rayfield about the alleged hitting tended to bolster the credibility of Darlene Belton and lower that of the defendant.
The second assignment of error concerns the admissibility of testimony elicited by the prosecution from defense character witnesses which would bolster the credibility of Darlene Belton. The credibility of a witness may be supported by reputation evidence only concerning the witness' truthfulness or untruthfulness. LSA-C.E. art. 608(A)(1). The admission of this evidence as to the peacefulness of Ms. Belton's character was error.
The third assignment of error concerned the testimony of Darlene Belton that she had moved out of the apartment she shared with Berryhill because he had hit her. Evidence of other crimes, wrongs or acts is not *1113 admissible to show that the accused acted in conformity therewith. LSA-C.E. art. 404(B)(1). The admission of her testimony was clearly erroneous.
The identification of the defendant as the perpetrator of the crime in this case was based solely upon the testimony of Darlene Belton. The other evidence against the defendant was merely circumstantial. Evidence which would enhance the credibility of Ms. Belton and diminish the credibility of the defendant could not but have a substantive effect on the outcome of the defendant's trial. This is illustrated by the fact that the jury found the defendant guilty of manslaughter when he had been charged with second degree murder, which appears to be a compromise verdict. This is also evident in the words of the judge at sentencing, which make two references to the alleged hitting of Darlene by the defendant. Thus the cumulative effect of these evidentiary errors, which the majority found to be harmless, was prejudicial to the defendant. Therefore the doctrine of harmless error should not apply.
For the above reasons, I would respectfully dissent from the majority opinion.
NOTES
[1] LSA-R.S. 15:490 and 15:491 have been repealed. This subject is governed by Art. 404 and Art. 405 of the La.Code of Evidence effective January 1, 1989.
[2] The defendant also assigns as error the State's questioning of Roeshaun Esco, but defense counsel made no objections during her cross-examination. Because defendant failed to raise an objection at the time of trial, he cannot raise it as error on appeal. LSA-C.Cr.P. art. 841.
[3] LSA-R.S. 14:95.2 was repealed by Acts 1988, No. 319, Sec. 2.