581 So.2d 349 (1991)
STATE of Louisiana
v.
Elizabeth JAMES and Leonidas James.
No. 88-KA-1914.
Court of Appeal of Louisiana, Fourth Circuit.
May 30, 1991.
*350 Harry F. Connick, Dist. Atty., Martin Melton, Asst. Dist. Atty., New Orleans, for plaintiff-appellee State.
M. Craig Colwart, Orleans Indigent Defender Program, New Orleans, for defendants-appellants Elizabeth James & Leonidas James.
Before KLEES, CIACCIO and PLOTKIN, JJ.
KLEES, Judge.

STATEMENT OF THE CASE:
On October 6, 1987, the appellants were charged with one count each of the possession with the intent to distribute marijuana and possession with the intent to distribute cocaine.[1] On November 17th, a twelve-member jury found them both guilty as charged on both counts. They were each sentenced to serve four years at hard labor on the marijuana count and six years at hard labor on the cocaine count, the sentences to be served concurrently. The court then suspended the sentences, placed each appellant on five years active probation, and ordered that they each pay court costs or serve an additional thirty days in parish prison in default of payment of court costs. This appeal followed.

FACTS:
On August 19, 1987, police officers received information from neighbors and from a confidential informant that a black man with a beard and a black woman with a hairpiece were selling marijuana and cocaine from 1309½ S. Saratoga Street, a second-story apartment. At approximately 9:45 p.m., Officers Bardy and Phillips set up a surveillance of that residence, with other officers stationed nearby as backup. At approximately 10:00 p.m., the officers observed three men approach the residence and knock on the door. A man later identified as the defendant Leonidas James opened the door, came outside, conversed with the men, received currency from one of them, and then reentered the residence. A few minutes later, James reappeared and handed an item to one of the men. The men then left.
At approximately 10:30 p.m., the officers observed a woman knock at the door. The knock was answered by a woman later identified as the defendant Elizabeth James, wife of Leonidas James. Ms. James and the woman talked, and then the woman gave Ms. James some money. Ms. James went back inside and then reemerged a few minutes later. She handed the woman something, and the woman then *351 left. Before the woman disappeared, Ms. James leaned over the balcony and told her to be careful because police officers in a white Ford were in the area. The officers witnessing this exchange radioed to backup officers, who stopped the woman a few blocks from the residence. The woman was found to be in possession of two handrolled marijuana cigarettes.
Between 11:00 and 11:30 p.m., the officers observed other such traffic. In each instance, James or Ms. James (whoever answered the door) would lock the door behind them whenever they exited or entered. This traffic continued until approximately 11:30, when a man dressed in a green scrubtype shirt knocked on the door. James answered the door, and he and Ms. James came out of the residence. The man showed them a large roll of money. A heated discussion ensued, and the officers heard James tell the man that the "shop is closed. We're out." The man left, James left, and Ms. James reentered the apartment and locked the door.
The officers watched the scene for a while longer and then terminated the surveillance. The next day, the officers prepared an application for a search warrant. The warrant was signed on August 21st. At approximately 10:00 p.m. on that date, Officers Bardy and Phillips then set up another surveillance of the residence and observed more transactions, with the defendants locking the door after each transaction. Officer Bardy approached Ms. James, who was standing in front of the residence, and served the warrant on her. He retrieved the keys to the apartment from her and kept her in the front while the other officers used the keys to enter the apartment. Inside, the officers found James and another man talking in a small bedroom located just off the living room. On the bed, the officers found a box containing eight handrolled marijuana cigarettes, a pile of loose marijuana, some $1.00 bills, plastic baggies, and rolling papers. A gun was also found on the bed. On a mantel near the bed, the officers found a pipe and a test tube containing a white powdery residue, and a metal spoon. A large scale and a smaller scale were also found in the bedroom. The officers seized documents and bills in the names of the defendants addressed to the apartment.
Officer Selby, qualified as an expert in the packaging, use, and distribution of controlled dangerous substances including marijuana and cocaine, testified that marijuana was often sold in cigarettes, in small amounts in coin envelopes, and in larger amounts in baggies. He testified that where sales of marijuana were made out of someone's house, it was common to find marijuana both lying loose and rolled in cigarettes. He testified the usual price of a cigarette was $1.00. He testified that many times, those who sell marijuana also sold cocaine. He explained that such dealers generally bought and sold marijuana to help finance the wholesale purchase of cocaine for retail sales. He testified that cocaine was generally packaged in the corners of baggies, which had been cut from the whole baggie and had been heat sealed or tied. He testified that these types of baggies were found in the James's apartment when the warrant was executed. He theorized that the pipe, test tube, and spoon had been used in freebasing cocaine.
Elizabeth James admitted there was marijuana in her apartment, but she denied selling it or selling cocaine. She testified the marijuana found when the search warrant was executed was for the personal use of her and her husband. She identified the pipe and test tube as belonging to another man who sometimes stayed at their apartment, and she insisted they had been seized from under the kitchen sink. She denied selling drugs on either August 19th or August 21st. She testified that if Officers Bardy and Phillips had been positioned as Officer Bardy had testified, they would have been easily observed by anyone leaving the apartment. She also indicated she and her husband had a dog, always kept outside, which would have been barking if the officers had been positioned there.
Leonidas James also denied selling any drugs, maintaining the marijuana was only for their personal use. He also contended that the pipe and test tube, which he insisted were found under the kitchen sink, belonged *352 to the other man who sometimes stayed there. He insisted that only two handrolled cigarettes and a little loose marijuana were found in the box. He denied that the baggies were also found there, and he also denied that any scales were found in the house. He denied having any baggies with the corners cut out. He agreed with his wife that if the officers had been where they indicated they conducted the surveillance, they would have been seen by anyone entering or leaving the apartment, and the dog would have been barking at them.
On rebuttal, Officer Bardy testified he observed a small puppy which was briefly on the porch on August 19th, but it remained in the apartment most of the time the surveillance was conducted. He testified there was evidence that the dog was kept in the bathroom. He maintained he found the pipe and test tube lying on the mantel in the bedroom.

ERRORS PATENT
A review of the record reveals only one error patent, that which is raised by the appellants as assignment of error two. By this assignment, the appellants contend the trial court erred by ordering them to serve additional jail time in lieu of the payment of court costs. The State concedes this argument. Although the appellants were represented by private counsel at trial, O.I.D.P. was appointed to represent them on appeal. This court has held that an indigent defendant cannot be subjected to imprisonment for a longer period of time because he cannot pay a fine or court costs. State v. Berryhill, 562 So.2d 1105, 1111-12 (La.App. 4th Cir.1990); State v. Stacker, 543 So.2d 539, 540 (La.App. 4th Cir.1989). In both Berryhill and Stacker, this court held that a defendant is considered indigent for sentencing purposes if he is found to be indigent at any point in the proceedings, including while on appeal. Thus, the portions of the appellants' sentences which impose jail time in lieu of the payment of court costs should be deleted.

Other Assignments of Error

I.
By their first assignment of error, the appellants contend there was insufficient evidence to support their convictions for possession with the intent to distribute cocaine. In support of this contention, they argue that no cocaine was found at their apartment when the warrant was executed except for trace amounts in the pipe and test tube, which they maintain belonged to someone else. They also point to the fact that there was no evidence that they ever sold cocaine because the only "purchaser" stopped by the police during their surveillance of the apartment was found with only marijuana. They maintain that at best, this evidence would show mere possession of cocaine.
In State v. Heck, 560 So.2d 611 (La.App. 4th Cir.), writ denied, 566 So.2d 395 (La. 1990), this court set forth the standard for an appellate review of the sufficiency of evidence to support a defendant's conviction:
In evaluating the sufficiency of evidence to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jacobs, 504 So.2d 817 (La.1987). Where the conviction is based upon circumstantial evidence, R.S. 15:438 provides that such evidence must exclude every reasonable hypothesis of innocence. State v. Langford, 483 So.2d 979 (La.1986). R.S. 15:438 does not establish a stricter standard of review than the more general rational juror's reasonable doubt formula; it is merely an evidentiary guide for the jury when considering circumstantial evidence. State v. Porretto, 468 So.2d 1142 (La.1985).
Heck, 560 So.2d at 614-615.
The appellants were convicted of possession with the intent to distribute cocaine. To support these convictions, the State needed to show that the appellants knowingly or intentionally possessed cocaine and that they did so with the intent to distribute *353 the drug. See State v. Carroll, 546 So.2d 1365 (La.App. 4th Cir.1989). The appellants do not dispute that trace amounts of cocaine were found in their apartment in the test tube and the pipe. Rather, they argue that the amount of cocaine found and the area in which it was found would not lead a rational fact finder to conclude that the cocaine was possessed with the intent to distribute it. They insist the small amount of cocaine found in the pipe and the test tube support a finding that the cocaine found in their apartment was the residue of freebasing.
Most of the argument in the State's brief does not negate the appellants' hypothesis. The State first notes that although the one buyer who was stopped was found with only marijuana, it is unknown what was sold to the other buyers. However, this lack of knowledge does not prove that cocaine was sold to any of the other buyers. The State next notes that Officer Selby testified that often cocaine sellers will also sell marijuana in order to help support their business. However, this testimony does not establish that the appellants were selling cocaine in addition to marijuana, a fact that the State must affirmatively prove. The State also points to Officer Selby's testimony concerning the use of spoons in the packaging of cocaine. However, the spoon was found on the mantel next to the pipe and the test tube, and even Officer Selby testified that it was most likely that the spoon was used in freebasing. In addition, a test of the spoon was negative for cocaine residue. The State argues that the appellants' testimony that they did not sell cocaine should not be believed because at trial they also denied selling marijuana, but in their brief they admitted the evidence supported their convictions for possession with the intent to distribute marijuana. However, even if the appellants' testimony was not credible, the State still had the burden of affirmatively proving the elements of their possession with the intent to distribute cocaine.
The only factor which would show an intention to distribute cocaine would be the presence of baggies with the corners cut off of them, such baggies having been found when the officers executed the warrant. Officer Selby testified that cocaine was often placed in small packages made by cutting the corners off of baggies. There was evidence to support a finding that the appellants at one time may have distributed cocaine in that manner. Thus, although the evidence produced at trial showed the appellants were in possession of trace amounts of cocaine, it did not show that this cocaine was possessed with the intent to distribute it.
The evidence does not support the appellants' convictions, however it would support convictions for simple possession of cocaine, a lesser included verdict of their convictions. See C.Cr.P. art. 814 A(49). C.Cr.P. art. 821 E provides:
If the appellate court finds that the evidence, viewed in the light most favorable to the state, supports only a conviction of a lesser included responsive offense, the court, in lieu of granting a post verdict judgment of acquittal, may modify the verdict and render a judgment of conviction on the lesser included responsive offense.
See State v. Lowe, 521 So.2d 454 (La.App. 4th Cir.), writ denied 525 So.2d 1055 (La. 1988). Because the evidence adduced at trial only supports convictions for possession of cocaine, this court will amend the appellants' convictions for possession with the intent to distribute cocaine to simple possession of cocaine. Their sentences on these counts are vacated, and the matter is remanded for resentencing on these counts.

III.
By their last assignment of error, the appellants contend the trial court erred by denying their motion to suppress the evidence. Specifically, they argue the affidavit did not support a finding that drugs would still be found in their apartment.
C.Cr.P. art. 162 provides that a search warrant may be issued "only upon probable cause established to the satisfaction of the judge, by the affidavit of a credible person, reciting facts establishing the cause for the issuance of the warrant." *354 The Louisiana Supreme Court has held that probable cause exists when:
the facts and circumstances within the affiant's knowledge, and those of which he has reasonably trustworthy information, are sufficient to support a reasonable belief that evidence of contraband may be found at the place to be searched.
State v. Duncan, 420 So.2d 1105 (La.1982). See also State v. Roebuck, 530 So.2d 1242 (La.App. 4th Cir.), writ denied 531 So.2d 764 (La.1988); State v. Scott, 499 So.2d 1248 (La.App. 4th Cir.1986). The facts which form the basis for probable cause to issue a search warrant must be contained "within the four corners" of the affidavit. Duncan; Roebuck. A magistrate must be given enough information to make an independent judgment that probable cause exists for the issuance of the warrant. State v. Manso, 449 So.2d 480, 482, (La.1984), cert. denied, Manso v. Louisiana, 469 U.S. 835, 105 S.Ct. 129, 83 L.Ed.2d 70 (1984).
In its review of a magistrate's finding of probable cause, the appellate court must determine whether the "totality of circumstances" set forth in the affidavit is sufficient to allow the magistrate
to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband ... will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclu[ding] that probable cause existed." Illinois v. Gates, 462 U.S. 213, 238-39, 103 S.Ct. 2317 [2332, 76 L.Ed.2d 527] (1983). (citations omitted)
See also Manso; Roebuck.
Here, the information contained in the affidavit was extremely similar to the testimony of the officers given at trial and of Officer Bardy at the suppression hearing, which was very similar to that given at trial. The affidavit also contained the information that the officers were told that the appellants' business "was a large operation which was open for business around the clock." The affidavit also indicated that when the last customer, the one in the green T-shirt, knocked at the door and engaged both appellants in conversation, showing them a large roll of money, "[b]oth occupants became very disgruntled and told the subject that the shop was closed and they they were `out'."
The appellants argue that this information, although showing activity on August 19th, could not have led a magistrate to believe that drugs would still be in the apartment because the appellants were heard telling the last customer that they were "out". However, it could be argued that the magistrate had probable cause to believe that there would be drugs in the apartment when the warrant was signed two days later. The affidavit indicated that the appellants' business was a "large operation which was open around the clock." The officers' surveillance disclosed a thriving business. Thus, the fact that the appellants may have run out of drugs on the night of August 19th would not preclude a finding that it was more probable than not that they would replenish their stock, given the large scale of their operation. Therefore, even though they might have run out of drugs on August 19th there was probable cause to believe there would be drugs in the apartment when the officers obtained the warrant two days later. As such the trial court did not err by denying the motion to suppress the evidence. This assignment has no merit.
Accordingly, the appellants' convictions with respect to the possession with the intent to distribute marijuana are affirmed. The sentence of four years at hard labor, suspended is affirmed, but amended to delete the provision that they serve additional jail time in lieu of the payment of their court costs. Their convictions of possession with the intent to distribute cocaine are reduced to simple possession of cocaine, and as amended, affirmed. The sentences on these convictions are vacated, and these matters remanded for resentencing as to simple possession of cocaine.
*355 CONVICTIONS AMENDED AND AFFIRMED, SENTENCES VACATED AND REMANDED FOR RESENTENCING.
NOTES
[1] A codefendant also charged in this case was found not guilty of both counts.