632 So.2d 801 (1994)
STATE of Louisiana
v.
Michael IRBY.
No. 93-K-2220.
Court of Appeal of Louisiana, Fourth Circuit.
February 4, 1994.
*802 Harry F. Connick, Dist. Atty., Charmagne Padua, Asst. Dist. Atty., New Orleans, for relator.
Bruce Whittaker, New Orleans, for respondent.
Before BARRY, ARMSTRONG and JONES, JJ.

ON APPLICATION FOR REHEARING
ARMSTRONG, Judge.
On motion of the State and of this court ex proprio motu, we grant rehearing to correct several clerical errors contained in our earlier decision.
On December 9, 1991, defendant Michael Irby was charged with possession of more than 400 grams of cocaine. He was at large for a time, and it was not until August 20, 1993, that he was arraigned and pled not guilty. His motion to suppress the evidence, heard September 21st, was denied in part and granted in part on October 22nd. The State now comes before this court seeking relief from the partial granting of this motion.[1] We grant the State's application for supervisory writs to consider the correctness of that part of the trial court judgment granting defendant's motion to suppress the evidence.
On June 26, 1991, N.O.P.D. narcotics officers received a tip that the defendant, Michael Irby, was distributing crack cocaine in the area of Plainsfield Drive in eastern New Orleans. The tip indicated that Irby had just moved into the area and that he was distributing the drugs from his cars, a late model Porsche and a Chevy Spectrum. Around that time, they received another tip listing Irby's address as 2769 Jasmine Street and indicating that he stored the drugs at an apartment on Plainsfield Drive and sold the drugs from his sister's apartment at 4000 Hamburg Street, Apartment F, in the St. Bernard Housing Project. The tip also noted that Irby used a Peugeot which was registered in his sister's name. The officers attempted to confirm this information but were unable to do so at that time.
On September 27, 1991, the officers received a telephone complaint that Irby was selling cocaine from a residence in the St. Bernard Project. The tip indicated that Irby kept the drugs at his house on Jasmine Street and that he used a white Suzuki jeep to transport the cocaine. On October 10th narcotics officers set up a surveillance of the Jasmine Street residence and eventually observed the defendant pull up to the house in a white Suzuki and park in the driveway. From their vantage point, the officers were unable to see the vehicle once it had pulled back into the driveway. After waiting a time and not seeing the defendant emerge toward the front of the residence, the officers left their position and drove by the driveway. As they passed by, they looked down the driveway and saw the defendant entering a shed which was located in the rear of the house. They drove back to their original position, and a few minutes later they saw the defendant leave in the Suzuki. They followed him *803 but lost him once he entered the St. Bernard Housing Project.
On October 11th, they again set up a surveillance of the Jasmine Street residence. Soon thereafter, they saw the defendant drive up in the Suzuki, exit the vehicle, and go into the shed at the rear of the property. Remaining there only a few minutes, the defendant left the shed carrying a gray cloth bag. He reentered the Suzuki and left the house. The officers again followed him to the St. Bernard Housing Project, where he pulled into a driveway in the 3900 block of Duplessis Street. He left the Suzuki, carrying the gray bag, and entered an apartment at 3939 Duplessis. He remained there a short time, and when he reappeared he was not carrying the bag. He was stopped as he was reentering the Suzuki, advised of his rights, and advised that he was under investigation for narcotics violations. In response to the officers' questions, the defendant denied that he had entered the apartment and denied knowing who lived there.
The officers took Irby back to the apartment from which he had just emerged. They knocked on the door, which was opened by Kim Miles. In response to the officers' question, she identified the defendant as her cousin. The officers advised her of her rights, advised her that she was also under investigation for narcotics activity, and asked her if she would consent to a search of her apartment. The officers told her that if she did not consent, they would hold her there until they had obtained a search warrant. Ms. Miles told the officers she knew nothing about any drugs and she consented to a search of the apartment. She indicated that the defendant had gone into a bedroom while he was visiting her. The officers entered that bedroom and found the gray cloth bag hidden in a blanket in the bedroom. They opened the bag and found it contained approximately fourteen or fifteen grams of crack cocaine. Approximately $120.00 and a gun were also seized. The defendant was placed under arrest, and he told Ms. Miles to "take the rap" for the cocaine and he would take care of her.
The defendant told the officers that he lived at the Jasmine Street residence with his mother. The officers decided to apply for a warrant to search that residence. As they were taking Irby to their car, he suddenly called out to his mother, who had appeared on the scene, to call Jasmine Street because the officers were going there. Fearing that evidence might be destroyed before a warrant could be obtained, the officers went directly to the Jasmine Street residence. Once there the officers knocked on the door, which was opened by the defendant's brother. The brother refused to allow the officers to enter the house. One officer described the brother as violent and acting irrationally. The officers decided to obtain a warrant to search the house, and a few of them left to prepare it. The defendant's mother soon drove up in the Suzuki, which had been left in the project. When told that a warrant was being prepared, she agreed to allow the officers to search the house.
The defendant was taken into the house and left with one officer while the other officers searched the house. Finding nothing in the house, the officers went to the shed, which was locked. Finding no key in the house or on the defendant, the officers broke into the shed and found a scale and an old lunch box hidden in the rafters which contained approximately twenty-eight ounces of cocaine. When the defendant realized the officers were searching the shed, he ran through the house and exited the back door, but he was captured in the back yard. Prior to the time the officers broke into the shed the defendant's mother indicated that the shed did not belong to them but instead belonged to the neighbors. The neighbors, however, told the officers that the shed belonged to the defendant's house. After the defendant had been taken to police headquarters, he told the officers that he obtained his drugs from two Cubans who lived across the river.
After hearing this evidence, the trial court denied the motion to suppress the evidence seized from Duplessis Street but suppressed the evidence seized from the shed on Jasmine Street.
The State contends that the trial court erred by suppressing the evidence seized from the shed because the defendant's *804 mother had consented to a search of it. It admits that the mother at one point stated that she could not consent to the search of the shed because it belonged to her neighbors, but it argues that this statement was made after the shed had already been searched. In addition, it argues that in any event the consent to search her house included the consent to search any outbuildings within proximity of the house.
With respect to the time at which Mrs. Irby told the officers that she did not consent to the search of the shed, the State argues that the defense failed to rebut the written permission to search because it failed to show that her permission did not extend to the shed. However, a reading of Det. Vickers' testimony shows that Mrs. Irby told the officers prior to their search of the shed that she could not consent to the search of it because it did not belong to her. At the suppression hearing, the following occurred:
Q. In any event Mrs. Irby denied ownership or control of the shed?
A. That is correct. And the driveway as well.
Q. That was before the shed was broken into by the officers; correct?
A. Let me check. That is correct. She denied it.
Q. She denied it was her shed before the thing was broken into?
A. Before it was broken into?
Q. I believe that is on Page 9 of the report?
A. I am looking on Page 7.
Q. I am sorry. You are right. I had the wrong page. Is that correct?
A. Yes.
Q. She gave consent to search the residence. The residence was being searched. She denied ownership of the shed or control of the shed. Then the officers at that point then moved to the shed area; correct and started searching and broke it open?
A. That is correct.
It is apparent that Det. Vickers was referring to the police report during this portion of the testimony. Therefore, the defense showed that Mrs. Irby consented only to the search of the house and that she specifically did not consent to a search of the driveway or the shed.
The State also argues that in any event the consent form signed by Mrs. Irby allowed them to search the entire property, not just the house. The form itself authorizes the search of "my residence or other real estate, located at 2769 Jasmine St." (A copy of this form is included in the State's application.) The State argues that the language "or other real estate" includes all outbuildings on the property, including the shed. In support, it cites State v. Roach, 322 So.2d 222 (La.1975), and State v. Brouillette, 465 So.2d 124 (La. App. 4th Cir.1985), where both courts held that the term "premises" used in a search warrant affidavit could be reasonably construed to include the house, the garage, and "other outbuildings which one normally associates with and includes in the word `premises' ", Brouillette, at 126, or "any other outbuildings within close proximity of the house proper that one normally associates with and includes within the word `house' or `premises' ", Roach, at 226. In United States v. Dunn, 480 U.S. 294, 301, 107 S.Ct. 1134, 1139, 94 L.Ed.2d 326 (1987), the Supreme Court set forth four factors to be used to determine the "curtilage" of a house: "the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by."
The State argues that using Dunn`s factors, the shed could be considered to be within the "curtilage" of the house, and thus the consent to search form would encompass the shed. It points to the fact that the shed was just behind and to the side of the house, at the end of the driveway. In addition, it also points to photographs taken of the shed and the driveway sometime after the search, which feature a chainlink fence clearly showing that the shed is on the property of 2769 Jasmine Street. However, as noted at the hearing, the fence was not there when the search was made. This court cannot consider *805 the fence's presence as being determinative of to which property the shed belonged.
Taking the Dunn factors, it appears that the shed would fall within the "curtilage" of the residence. If the only thing this court had to consider was the consent form, the search of the shed would probably have been authorized by the form. Likewise, if the officers had gotten a search warrant for the "premises", the shed probably would have been included within its scope. However, this court must also consider Mrs. Irby's refusal to consent to the search of the shed. It is true that she based this refusal upon her insistence that the shed belonged to the neighbors, and it was quite likely that the shed did belong to her given the neighbors' statements that the shed belonged to the Irbys and the officers' observance of the defendant taking the gray cloth bag out of the shed. However, the search of the shed was not based on a warrant, but rather on Mrs. Irby's consent, which specifically did not include the shed, no matter that the consent form included the ambiguous words "residence or other real estate". Thus, it cannot be said that the search of the shed was based upon Mrs. Irby's consent to search the house.
Even though the search cannot be justified upon a "consent" basis, the evidence seized from the shed need not necessarily be suppressed. As the State argues, if there was probable cause for the issuance of a search warrant for the residence and the shed, the evidence in the shed would have "inevitably" been discovered in the absence of Mrs. Irby's consent. See Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). As noted in United States v. Crews, 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980), there are three exceptions to Wong Sun`s exclusionary rule: the independent source doctrine, the inevitable discovery doctrine, and the attenuation doctrine. See also State v. Welch, 449 So.2d 468 (La.1984); State v. Guy, 575 So.2d 429 (La. App. 4th Cir.1991), writ den. 578 So.2d 930 (1991). Thus, if there was probable cause for the issuance of a warrant for the shed, the evidence need not be suppressed.
In State v. James, 581 So.2d 349 (La.App. 4th Cir.1991), this court set forth the standard of review of the issuance of a search warrant:
C.Cr.P. art. 162 provides that a search warrant may be issued "only upon probable cause established to the satisfaction of the judge, by the affidavit of a credible person, reciting facts and establishing the cause for the issuance of the warrant." The Louisiana Supreme Court has held that probable cause exists when:
the facts and circumstances within the affiant's knowledge, and those of which he has reasonably trustworthy information, are sufficient to support a reasonable belief that evidence [or] contraband may be found at the place to be searched.

State v. Duncan, 420 So.2d 1105 (La.1982). See also State v. Roebuck, 530 So.2d 1242 (La.App. 4th Cir.1988), writ denied 531 So.2d 764 (La.1988); State v. Scott, 499 So.2d 1248 (La.App. 4th Cir.1986). The facts which form the basis for the probable cause to issue a search warrant must be contained "within the four corners" of the affidavit. Duncan; Roebuck. A magistrate must be given enough information to make an independent judgment that probable cause exists for the issuance of the warrant. State v. Manso, 449 So.2d 480, 482, (La.1984), cert. denied, Manso v. Louisiana, 469 U.S. 835, 105 S.Ct. 129, 83 L.Ed.2d 70 (1984).
In its review of a magistrate's finding of probable cause, the appellate court must determine whether the "totality of circumstances" set forth in the affidavit is sufficient to allow the magistrate
to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband ... will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclu[ding] that probable cause existed." Illinois v. Gates, 462 U.S. 213, 238-239, 103 S.Ct. 2317 [2332, 76 L.Ed.2d 527] (1983). (citations omitted) *806 See also Manso; Roebuck.

James, at 353-354.[2]
Here, the officers had received information that the defendant was selling cocaine in the St. Bernard Project. The tip indicated that the defendant kept his store of cocaine at his residence on Jasmine Street, and he used a white Suzuki to make deliveries to the project. The officers twice observed him leave his house and drive to the St. Bernard Housing Project in the Suzuki. The second time they observed this, they also saw him take a gray cloth bag from the shed, take it inside an apartment in the project, and leave soon thereafter without the bag. A search of that apartment pursuant to the resident's consent revealed that the gray bag contained cocaine. Given these factors, it appears that there was probable cause for the officers to believe there was cocaine in the shed. Thus, it is quite likely that a warrant would have been issued for a search of the shed and the cocaine would inevitably have been discovered. Therefore, the trial court erred by suppressing the evidence seized from the Jasmine Street shed.
For the foregoing reasons, we reverse that part of the trial court judgment granting defendant's motion to suppress the evidence seized from the Jasmine Street shed and remand this case for further proceedings.
REVERSED AND REMANDED.
NOTES
[1] A companion writ, 632 So.2d 798, has been filed by the defendant complaining about the partial denial of his motion.
[2] Recently, in State v. John Barrilleaux, 620 So.2d 1317 (La.1993), the Court somewhat relaxed the "four corners" requirement. However, it appears that this exception should be limited to cases where, for some good reason, additional information known by the affiant is not placed in the affidavit but is orally relayed to the magistrate prior to the signing of the warrant.