557 So.2d 1030 (1990)
STATE of Louisiana
v.
Terry JOHNSON.
No. 88-KA-1905.
Court of Appeal of Louisiana, Fourth Circuit.
February 15, 1990.
Harry F. Connick, Dist. Atty. and Michele M. Smith, Asst. Dist. Atty., New Orleans, for plaintiff-appellee, State.
William Noland, New Orleans, for defendant-appellant, Terry Johnson.
Before BARRY, KLEES and WILLIAMS, JJ.
*1031 KLEES, Judge.
On February 27, 1987 Jonathan T. Johnson and Terry Johnson, appellants herein, were each charged with simple burglary of an inhabited dwelling, a violation of R.S. 14:62.2.
Terry Johnson was found guilty as charged by a jury on October 29, 1987. He was sentenced on November 5, 1987 to ten years at hard labor with credit for time served, the first year of that sentence to be served without the benefit of probation, parole or suspension of sentence. On November 19, 1987 Terry Johnson was adjudicated a third felony offender. Consequently, his original sentence was vacated and he was re-sentenced to ten years at hard labor, with credit for time served and without benefit of probation, parole or suspension of sentence.
On January 12, 1987 at about 9:30 a.m., Steven Verderber, a Tulane professor, left his house located at 2835 Palmer Street to go to work. The house was in complete order when he left.
At about 11:30 a.m. as Mr. Verderber's neighbor, Mary Lee Tabb, returned to her house located across the street from Mr. Verderber's, she observed two young black men standing in front of the Verderber house. Suspecting that a burglary was in progress, she entered her house and went to a window where she proceeded to watch these two men for five to ten minutes. One of the men walked down the Verderber driveway, while the other one stayed in front of the house looking up and down the street. Ms. Tabb at that point called the police to report the suspected burglary.
Officer Deborah Prosper responded immediately to the call. She met with Ms. Tabb who described the two suspects to her. Ms. Tabb said that one (later identified as Jonathan Johnson) was tall and thin and was wearing a dark jacket, dark slacks, white tennis shoes and had on glasses. She said that the other one (later identified as appellant herein, Terry Johnson) was the shorter and stockier of the two. She said that he was wearing dark slacks, a red plaid shirt and tennis shoes.
Officer Prosper then radioed these descriptions to other police units so that they could canvas the area for the suspects.
She then investigated the Verderber house. At the back of the house, she found various tools, including a screwdriver, hammer, saw and carpentry belt outside the sliding glass doors which were still locked. The bathroom window was open. There was a footprint on an air conditioning unit beneath the window. She forced the door open and entered the house. The house had been ransacked. Stereo equipment had been dismantled and piled up near the door. No one was inside.
Going back outside, Officer Prosper noticed that the fence in the backyard, which led to another street, had been partially pulled down. She also noticed a red car with its doors open parked at the corner of Palmer and South Prieur Streets, two or three houses down from the Verderber house.
About forty-five minutes later, Officer Prosper observed Jonathan Johnson approach the red car. As he reached it, Officer Prosper approached him and asked him what he was doing and why his car was there. Based upon his response, she informed him that he was under investigation for a burglary. He was then shown to Ms. Tabb who identified him as one of the two men she had seen earlier.
Meanwhile, Officers Lucein and Moore were patrolling the area for suspects. They stopped at a Time-Saver at the intersection of South Claiborne and South Miro a few blocks from the burglary and asked the cashier if he had seen anyone matching the descriptions given by Ms. Tabb to the police. The cashier said a black male fitting the description of the second suspect, Terry Johnson, had just bought a pack of cigarettes there and left. As the officers got back in their police car and started to pull off they saw the suspect. He was asked to identify himself, and replied that he was waiting for his brother. The officers also asked him to remove his sweater so that they could see the shirt he was wearing underneath. The shirt was red *1032 plaid like the one described by Ms. Tabb. They advised the defendant that he was being held for investigation of a burglary and read him his Miranda rights. They then conducted a pat-down search of him for their personal safety. Officer Moore retrieved a mechanical toy from Terry Johnson's right front pants pocket. The officers then took the suspect to the scene of the crime where Ms. Tabb identified him as the second of the two suspects.
Mr. Verderber identified the mechanical toy found during the pat-down search of Terry Johnson as belonging to him and a necklace found during the search of Jonathan Johnson as belonging to his wife. He indicated that he had not given either of the suspects permission to enter his home.
A review of the record for errors patent reveals none.
Counsel for defendant contends that the trial court erred in allowing into evidence the mechanical toy and certain inculpatory statements by defendant[1] because the State failed to carry its burden of proof at the motion to suppress hearing that the warrantless search involved herein met the standards of a "Terry" pat-down search, limited to that necessary for the discovery of weapons.[2]
The defense relies primarily upon State v. Evans, 388 So.2d 774 (La.1980) and State v. Ruffin, 448 So.2d 1274 (La.1984). In both Evans and Ruffin, the defendants were lawfully stopped and then searched for weapons incidental to the stop during which contraband was found on the defendants. Each defendant was then charged on a drug-related offense and brought a motion to suppress the contraband seized. In each case, the defendant had been stopped by two officers, only one of which conducted the pat-down search for weapons. In each case, at the motion to suppress hearing, the officer who actually conducted the search did not testify. Instead, the other officer who did not conduct the search testified. The courts held that, because the officer who conducted the search did not testify, the record was lacking any evidence to show that there was a rational evidentiary basis for finding that the search was a limited one designed to discover a weapon. In Evans, the defendant pled guilty after the motion to suppress was denied. Consequently, the only pertinent evidence in the record on this issue was the testimony elicited at the motion to suppress hearing. In Ruffin, the case went to trial after the motion to suppress hearing. However, it appears that the officer who actually conducted the search failed to testify at trial as well as at the motion to suppress hearing.
The "evidentiary record" in the present case is different than that presented in Evans and Ruffin. In this case, at the motion to suppress hearing, only Officer Prosper, who did not conduct the pat-down search of defendant testified. Officer Moore, who conducted the search did not testify. Were this the only evidence available, under Ruffin and Evans, the State would have failed to meet its burden of showing that the evidence seized pursuant to the warrantless arrest was justified.
However, an appellate court in reviewing a ruling upon a motion to suppress may consider not only the evidence presented at the motion hearing, but also the evidence adduced at trial. State v. Seward, 509 So.2d 413 (La.1987); State v. Brooks, 505 So.2d 714 (La.1987); State v. Adams, 521 So.2d 470 (La.App. 4th Cir.1988), writ. den., 523 So.2d 231.
At trial, Officer Moore, the officer who conducted the search, did testify. He testified that the defendant was stopped a few blocks from the crime scene because he met the description of the burglar given by Ms. Tabb and that he conducted a pat down search for weapons of defendant for *1033 his own personal safety. During the course of the search, he found a mechanical toy in the defendant's right front pocket.
This information is sufficient to show that the search was conducted pursuant to a lawful stop and that the toy was found during a search limited to a search for weapons.
The authorization for a temporary stop of a person by the police is provided by C.Cr.P. art. 215.1, which states:
A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
In order to stop a person temporarily to facilitate an investigation, the officer must have a reasonable suspicion that the suspect has committed, is committing, or is about to commit a crime. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Jones, 483 So.2d 1207 (La. App. 4th Cir.1986), writ denied, 488 So.2d 197 (1986). "Reasonable suspicion" is something less than the probable cause required for an arrest, and the reviewing court must look to the facts and circumstances of each case to determine whether the detaining officer had sufficient facts within his knowledge to justify an infringement of the suspect's rights. State v. Jones, supra. Mere suspicion of activity is not a sufficient basis for police interference with an individual's freedom. State v. Williams, 421 So.2d 874 (La.1982).
"An officer may conduct a limited, self-protective search for weapons in conjunction with an investigatory stop." State v. Brown, 482 So.2d 115, 116 (La.App. 4th Cir.1986), writ. den. 487 So.2d 436. Officer Moore had reasonable suspicion to stop defendant because he met the description of a suspect who had just committed a burglary in the immediate area. His testimony further reveals that his search of the defendant was limited to a "pat down" search for weapons. Consequently, the trial court did not err in denying defendant's motion to suppress.
The defendant lists six pro se assignments of error. Since only one of these is briefed, the others are deemed abandoned. State v. Kenner, 384 So.2d 413 (La.1980).
The one assignment briefed is a claim of ineffective assistance of counsel. The defendant contends that he was denied effective assistance of counsel because his attorney failed to call witnesses on his behalf and erred in allowing the defendant's brother, Jonathan Johnson, to sit at the defense table.
Generally the issue of ineffective assistance of counsel is a matter more properly addressed by an application for post conviction relief, filed initially in the trial court where a full evidentiary hearing can be conducted. State v. Prudholm, 446 So.2d 729 (La.1984); State v. Reed, 483 So.2d 1278 (La.App. 4th Cir.1986). Only if the record discloses sufficient evidence to rule on the merits of the claim do the interests of judicial economy justify consideration of the issues on appeal. State v. Seiss, 428 So.2d 444 (La.1983); State v. Ratcliff, 416 So.2d 528 (La.1982); State v. Garland, 482 So.2d 133 (La.App. 4th Cir. 1986); State v. Landry, 499 So.2d 1320 (La.App. 4th Cir.1986).
In this case, the record does not disclose sufficient evidence to rule on the merits of the claim. Therefore defendant should raise this issue via an application for post-conviction relief.
Accordingly, for the foregoing reasons the defendant's conviction and sentence is affirmed. Defendant may raise his ineffective assistance of counsel claim by an application for post conviction relief.
AFFIRMED.
NOTES
[1] The only statement by defendant mentioned at trial is during Officer Moore's testimony. Moore testified that when he and his partner initially stopped the defendant, the defendant told them that he was standing on the corner next to the Time Saver waiting for his brother.
[2] Under C.Cr.P. 703(D) governing the filing of motions to suppress the evidence, the State bears the burden of proving the admissibility of a "purported confession or statement by the defendant or of any evidence seized without a warrant."