622 So.2d 791 (1993)
STATE of Louisiana
v.
Jerry P. PARKER.
No. 92-KA-2304.
Court of Appeal of Louisiana, Fourth Circuit.
July 27, 1993.
Richard Ieyoub, Atty. Gen., and Darryl W. Bubrig, Sr., Dist. Atty., 25th Judicial District, Parish of Plaquenines, Pointe-a-la-Hache, and Gilbert V. Andry, III, Asst. Dist. Atty., New Orleans, for plaintiff-appellee.
Peter A. Barbee, Indigent Defender Bd., Pointe-a-la-Hache, for defendant-appellant.
Before KLEES, ARMSTRONG and WALTZER, JJ.
*792 WALTZER, Judge.
Defendant Jerry Parker was charged by bill of information with possession of cocaine with intent to distribute. Mr. Parker entered a plea of not guilty and filed a Motion to Suppress the Evidence. A combined preliminary hearing and hearing on the motion to suppress was held. The court found probable cause for the arrest and denied the motion to suppress. On April 14, 1992, the defendant entered a guilty plea to the reduced charge of simple possession of cocaine reserving his right to appeal the court's ruling on the motion to suppress the evidence. State v. Crosby, 338 So.2d 584 (La.1976). After the defendant waived delays, the trial court sentenced him to serve three years at hard labor, suspended the sentence, and placed the defendant on three years active probation followed by two years inactive probation. A $1000.00 fine was also imposed.
STATEMENT OF THE FACTS
On December 6, 1991, Deputy Sheriff David Illg received information from a confidential informant that Joseph and Jonathan Mitchell, a father and son drug dealing team, were in Sunrise selling drugs from a blue Nissan with dark tinted windows. When Deputy Illg arrived in Sunrise in front of the Mitchell residence, he observed the vehicle described by the informant with several subjects standing around it. Many of the subjects ran when the deputy drove up. Jonathan and Joseph Mitchell were seated inside the vehicle. As Deputy Illg approached the vehicle, Jonathan Mitchell threw a brown pill bottle containing 45 white rocks of cocaine from the car. A patdown search of Joseph Mitchell showed that he was also in possession of narcotics.
Defendant Parker was standing "right on the side of the vehicle", approximately one to two feet away from the vehicle door and was turning to walk away. A deputy stopped Jerry Parker, patted him down, and found a matchbox containing 4-5 rocks of cocaine. He stated that the area the defendant was in "was a high crime area as far as drug dealings ...", that they had received information that the Mitchells were engaged in selling drugs at that time, when the suspects saw the officers drive up, they acted "fidgety" to the extent that many of them ran away, and that they did not search the defendant until after they found the drugs on the Mitchells and defendant attempted to leave the scene.
ASSIGNMENT OF ERROR
The question presented by this assignment of error is whether the deputy was justified in seizing the matchbox containing cocaine from the defendant.
C.Cr.P. art. 215.1 provides that a law enforcement officer may stop a person in a public place whom he reasonably believes is committing, has committed, or is about to commit an offense. If an officer stops a person pursuant C.Cr.P. art. 215.1, he may conduct a limited patdown frisk for weapons if he reasonably believes that he is in danger or that the suspect is armed. See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Riley, 591 So.2d 1348 (La.App. 4th Cir.1991); State v. Ganier, 591 So.2d 1328 (La.App. 4th Cir.1991); State v. Wartberg, 586 So.2d 627 (La.App. 4th Cir.1991); State v. Johnson, 557 So.2d 1030 (La.App. 4th Cir.1990). As this Court noted in Johnson:
"Reasonable suspicion" is something less than the probable cause required for an arrest, and the reviewing court must look to the facts and circumstances of each case to determine whether the detaining officer had sufficient facts within his knowledge to justify an infringement of the suspect's rights. State v. Jones [483 So.2d 1207 (La.App. 4th Cir.1986)], supra. Mere suspicion of activity is not a sufficient basis for police interference with an individual's freedom. State v. Williams, 421 So.2d 874 (La.1982).
State v. Johnson, at 1033.
In the instant case, defendant was standing near the Nissan vehicle occupied by the Mitchells. In State v. Wartberg, 586 So.2d 627, 629 (La.App. 4th Cir.1991), this Court stated, "if this was only an investigatory stop, the officers were satisfied that they had seen a drug transaction and they were dealing with four suspects in an automobile, it would be reasonable to infer that *793 such suspects would be armed and dangerous." This Court then concluded that a reasonably cautious police officer was entitled to fear that the defendant might have a weapon and was justified in conducting a search. However, the Louisiana Supreme Court held in State v. Short, 605 So.2d 1102 (La.1992), that a frisk for weapons may not justify the seizure of rocks of cocaine inside a suspect's pants pocket. The facts in that case are as follows:
On June 17, 1991, Officer Darren Bush received an anonymous telephone call informing him that narcotics were being sold by persons loitering on the front porch of an unpainted, run-down looking house located near the middle of the 7200 block of Fig Street on the "lake bound" side of the street. Officer Bush and his partner Sergeant Tim Bayard were aware that this area has a reputation for frequent narcotic distribution. Later that evening at approximately 10:45 p.m., the officers turned from Pine Street onto the 7200 block of Fig Street and saw the house that matched the description furnished by the anonymous caller. Two men were walking from an alley alongside the house. The first man appeared to be holding money in his hand. The defendant was walking a short distance behind and "appeared to be putting something in his pocket." When the defendant saw the officers, "he totally lost his composure and began to make facial expressions. "Officer Bush testified that the defendant "couldn't decide which way he wanted to go" and walked in front of the police car, still attempting to put something in his right front pants pocket.
The officers believed that a drug transaction had occurred and stopped the defendant near the street corner, placing him against the police car and frisking him for weapons. According to Officer Bush, Sergeant Bayard "felt a hard object" in the watch pocket of the defendant's pants. Officer Bush testified that Sergeant Bayard's ten years experience in street level narcotics trafficking led him to believe that this object was crack cocaine. Sergeant Bayard seized the object and found two individually wrapped small pieces of crack cocaine.
This Court concluded that the officers had reasonable suspicion of criminal activity to justify the stop of the defendant. This Court then stated, "because of the notorious area and their suspicions that a drug deal had just concluded, the officers were justified in patting down the defendant for weapons. See State v. Wartberg, 586 So.2d 627 (La.App. 4th Cir.1991). The reasonable suspicion blossomed into probable cause when the officers seized two individually wrapped, small pieces of crack cocaine from the defendant's pocket." State v. Johnnie Short, 598 So.2d 730 (La.App. 4th Cir.1992). The Louisiana Supreme Court reversed this Court's decision stating, "The search went beyond a frisk for weapons."
Therefore, it does not appear that this search can be justified as a patdown frisk under C.Cr.P. art. 215.1. Likewise, it does not appear that the officer had probable cause to arrest the defendant before the matchbox was seized.
The search of the defendant is legal if there is probable cause for his arrest. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); State v. Wilson, 467 So.2d 503 (La.1985). "Probable cause to arrest exists when the facts and circumstances known to the officer and of which he has reasonably trustworthy information are sufficient to justify a man of ordinary caution to believe the person to be arrested has committed a crime." State v. Roebuck, 530 So.2d 1242 (La.App. 4th Cir. 1988) writ denied 531 So.2d 764. The circumstances upon which the arresting officers act must show that criminal activity is more probable than non-criminal activity. Equivocal conduct does not afford probable cause for arrest where the possibility of criminal conduct is no greater than the possibility of innocent behavior. State v. Buckley, 426 So.2d 103 (La.1983).
In Minnesota v. Dickerson, ___ U.S. ___, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), the Supreme Court stated:
Time and again, this Court has observed that searches and seizures "conducted outside the judicial process, without prior approval by judge or magistrate, *794 are per se unreasonable under the Fourth amendment-subject only to a few specifically established and well delineated exceptions." (citations omitted) One such exception was recognized in Terry v. Ohio, 392 U.S. 1, [88 S.Ct. 1868, 20 L.Ed.2d 889] (1968), which held that "where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot" the officer may briefly stop the suspicious person and make "reasonable inquiries" aimed at confirming or dispelling his suspicions. (citations omitted)
Terry further held that "[w]hen an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others," the officer may conduct a patdown search "to determine whether the person is in fact carrying a weapon." (citation omitted) "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence..." (citation omitted) Rather, a protective searchpermitted without a warrant and on the basis of reasonable suspicion less than probable causemust be strictly "limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby." (citations omitted) If the protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under Terry and its fruits will be suppressed. (citation omitted).
* * * * * *
We have already held that police officers, at least under certain circumstances, may seize contraband detected during the lawful execution of a Terry search ... Under th[e plain view] doctrine, if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant. (citations omitted) If, however, the police lack probable cause to believe that an object in plain view is contraband without conducting some further search of the objecti.e., if "its incriminating character [is not] immediately apparent," (citation omitted) the plain-view doctrine cannot justify its seizure. (citation omitted)
We think that this doctrine has an obvious application by analogy to cases in which an officer discovers contraband through the sense of touch during an otherwise lawful search. The rationale of the plain view doctrine is that if contraband is left in open view and is observed by a police officer from a lawful vantage point, there has been no invasion of a legitimate expectation of privacy and thus no "search" within the meaning of the Fourth Amendmentor at least no search independent of the initial intrusion that gave the officers their vantage point... The same can be said of tactile discoveries of contraband. If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain view context.
* * * * * *
Terry itself demonstrates that the sense of touch is capable of revealing the nature of an object with sufficient reliability to support a seizure. The very premise of Terry, after all, is that officers will be able to detect the presence of weapons through the sense of touch and Terry upheld precisely such a seizure... Regardless of whether the officer detects the contraband by sight or by touch, however, the Fourth Amendment's requirement that the officer have probable cause to believe that the item is contraband before seizing it ensures against excessively speculative seizures. *795 The court's second concernthat tough is more intrusive into privacy than is sightis inapposite in light of the fact that the intrusion the court fears has already been authorized by the lawful search for weapons. The seizure of an item whose identity is already known occasions no further invasion of privacy. (citations omitted) Accordingly, the suspect's privacy interests are not advanced by a categorical rule barring the seizure of contraband plainly detected through the sense of touch.
The court in Dickerson found:
Here, the officer's continued exploration of respondent's pocket after having concluded that it contained no weapon was unrelated to "[t]he sole justification of the search [under Terry:] ... the protection of the police officer and others nearby." (citation omitted). It therefore amounted to the sort of evidentiary search that Terry expressly refused to authorize...
The court concluded:
Although the officer was lawfully in a position to feel the lump in respondent's pocket, because Terry entitled him to place his hands upon respondent's jacket, the court below determined that the incriminating character of the object was not immediately apparent to him. Rather, the officer determined that the item was contraband only after conducting a further search, one not authorized by Terry or by any other exception to the warrant requirement. Because this further search of respondent's pocket was constitutionally invalid, the seizure of the cocaine that followed is likewise unconstitutional.
Thus under the Dickerson approach discussed above, the first point of analysis is whether the officers were justified in making a patdown weapons search in the instant case.
Defendant was in a high crime area known for drug deals, the officers had received information that the Mitchells were engaged in selling drugs at that time in Sunrise from a blue Nissan with dark tinted windows, when the suspects saw the officers drive up, they acted "fidgety" to the extent that many of them ran away, the blue Nissan with dark tinted windows was parked in front of the Mitchells residence and the Mitchells were in fact in that vehicle, defendant was in extremely close proximity to the vehicle, and that they did not search the defendant until after they found the drugs on the Mitchells and defendant attempted to leave the scene. The officers were justified in conducting a pat down search of the defendant for weapons.
Having concluded that a patdown search was justified, the next step in the analysis is to examine whether under Dickerson during the patdown search, did the object whose contour or mass the officer felt make it immediately identifiable as contraband?
In the instant case, the officer did not feel drugs in defendant's pocket, but rather only felt a matchbox. A matchbox in and of itself is not contraband. The Dickerson opinion requires that the felt object feel like contraband and a matchbox is not contraband. In order to determine if the matchbox held drugs, it was necessary for the officer to remove it from inside the defendant's pocket and open it. This is the type of further manipulation outlawed by Dickerson.
For the reasons discussed, the defendant's conviction is reversed and his sentence is vacated.
REVERSED.