639 So.2d 1239 (1994)
STATE of Louisiana
v.
Pedro SCULL, et al.
No. 93-K-2360.
Court of Appeal of Louisiana, Fourth Circuit.
June 30, 1994.
*1240 Harry F. Connick, Dist. Atty. of Orleans Parish, Charmagne Padua, Asst. Dist. Atty. of Orleans Parish, New Orleans, for the State.
George A. Blair, III, New Orleans, for defendants.
Before BARRY, KLEES and PLOTKIN, JJ.
PLOTKIN, Judge.
On January 11, 1993, the defendants Pedro Scull, Bernardo Burrel, and Antonio Flores were charged with one count each of possession of two hundred but less than 400 grams of cocaine. They were arraigned on January 20th and pled not guilty. Their motion to suppress the evidence, heard June 14th, was granted on September 20th. The State now comes before this court seeking relief from this ruling.
The following facts were gleaned from an application for a search warrant and from the suppression hearing transcript. The only witness to testify was Detective Lemmie Rodgers. He received the confidential information, set up the surveillance and secured the search warrant. According to the application, within seventy-two hours prior to December 7, 1992, police officers received a tip from a confidential informant whose information had led to prior narcotics arrests. The C.I. told the officers that a Spanish man nicknamed "Raul" would make trips to Florida to pick up cocaine, which he would store at 2727 ½ Bruxelles Street. According to the C.I., when customers placed their orders with "Raul" by phone or beeper, "Raul" would then take the cocaine from 2727 ½ Bruxelles and meet them at another location, usually at 2225 Lafitte Street, to make the sale. The affidavit listed the C.I.'s basis of knowledge as his having purchased cocaine from "Raul" in this manner within the past seventy-two hours.
Based upon this tip, officers set up a surveillance of the Bruxelles Street address on December 7th at approximately 6:45 p.m. At approximately 7:10 p.m., the officers watched a gray Chevy pull up and park in front of the house. The driver, a black male approximately forty years old, entered the apartment. Approximately fifteen minutes later, the officers saw a gray Cadillac with Florida license plates drive past the residence and park around the corner, although there were parking spaces closer to the residence. Two men got out of the car, the passenger carrying a small garbage bag, and they walked to the residence, looking around them as they walked. They then entered *1241 2727 ½ Bruxelles. After fifteen more minutes had passed, the two men left the apartment and returned to the Cadillac. They then drove back to the apartment, against traffic (the apartment was located on a one-way street). As they pulled in front of the apartment, the other man who the officers had first seen entering the apartment walked to the Cadillac and spoke with its occupants. The Cadillac then drove from the scene.
The officers followed the Cadillac to the area of the Lafitte Housing Project, where they temporarily lost sight of it. Other officers in the area, however, observed it parked in front of 2225 Lafitte. Through the open passenger door, the officers saw one of the occupants of the car, later identified as Pedro Scull, placing something in the glove compartment. The driver was identified as Burrel Bernardo. The officers stopped the men and searched the glove compartment, wherein they found approximately $3400.00. A canine unit was called, and the dog "alerted" to the money. None of the officers that stopped and searched the car testified.
Based upon these facts, a warrant was issued for 2727 ½ Bruxelles Street. At the suppression hearing, the officer testified that the C.I. told the police that "Raul" would be dropping off a package at the Bruxelles apartment. He identified the driver of the Chevy who first went into the apartment as Antonio Flores and the two men from the Cadillac as Scull and Bernardo. The officer described the events listed in the affidavit. He testified that after the warrant had been issued, the police searched the Bruxelles apartment and found a bag of cocaine on a top shelf in a bedroom. The officers also seized a beeper and a telephone bill in Flores' name.
The officer testified that other policemen decided to stop the Cadillac, even though the officers had not observed its occupants break any laws. The officer testified this decision was based on many factors: the car had Florida plates; its occupants had parked it around the corner from the Bruxelles apartment, even though closer parking spaces were available; they had entered the apartment carrying a bag; when they exited, they drove back against traffic to speak with Flores; and they then parked the Cadillac in front of 2225 Lafitte Street, the address from which the C.I. told them the cocaine was distributed. The officer also testified that the C.I. never indicated that he had been inside the Bruxelles apartment or had bought cocaine from there.
The trial court suppressed the currency seized from the glove compartment of the car and the evidence seized from the apartment on Bruxelles Street. With respect to the money seized from the glove compartment, the State argues that it should not have been suppressed because the officers had reasonable suspicion of criminal activity to stop the Cadillac, and once it was stopped, the officers had probable cause to search the car.

I. The Investigatory Stop of Scull and Bernardo
The authorization for a temporary stop by a police officer of a person in a public place is set forth in C.Cr.P. art. 215.1, which provides in part:
A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
See also Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Carey, 609 So.2d 897 (La.App. 4th Cir.1992); State v. Guy, 575 So.2d 429 (La.App. 4th Cir.1991), writ den. 578 So.2d 930 (1991); State v. Johnson, 557 So.2d 1030 (La.App. 4th Cir. 1990); State v. Jones, 483 So.2d 1207 (La. App. 4th Cir.1986), writ den. 488 So.2d 197 (1986). As this court noted in Johnson:
"Reasonable suspicion" is something less than the probable cause required for an arrest, and the reviewing court must look to the facts and circumstances of each case to determine whether the detaining officer had sufficient facts within his knowledge to justify an infringement of the suspect's rights. State v. Jones, supra. Mere suspicion of activity is not a sufficient basis for police interference with an individual's *1242 freedom. State v. Williams, 421 So.2d 874 (La.1982).
Johnson, at 1033. See also Carey; Guy.
Here, the officers received a tip from a reliable C.I. that "Raul" was storing cocaine at 2727 ½ Bruxelles Street. The C.I. indicated that "Raul", a Spanish male, would travel to Florida to get the cocaine, store it at the Bruxelles apartment, and then sell it at 2225 Lafitte Street. The officers watched one man enter the apartment and then watched two other men in a Cadillac bearing Florida plates drive to the Bruxelles apartment, pass it, and park around the corner. The men went inside the apartment, one carrying a small garbage bag, stayed a short time, and then left. The men drove the Cadillac back to apartment, against traffic, and spoke briefly with the first man to enter the apartment. The Cadillac then drove to the Lafitte Project, where the officers momentarily lost sight of it. The Cadillac was soon spotted parked outside 2225 Lafitte, and through the open passenger door the officers saw one of its occupants place an object into the glove compartment. Given these factors, it appears that the officers had reasonable suspicion of criminal activity to stop and detain the men in the Cadillac.

II. The Search of the Glove Compartment
At the suppression hearing the State argued that the search of the glove compartment of the Cadillac was valid pursuant to the "exigent circumstances" exception to the warrant requirement because the officers had probable cause to believe Scull had placed contraband inside it. The State reiterates this argument in its application. See United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); State v. Tatum, 466 So.2d 29 (La.1985); State v. LeCompte, 441 So.2d 249 (La.App. 4th Cir.1983), writ den. 446 So.2d 314 (1984). In Tatum, the Court held that police officers, who have probable cause to believe that a car they have lawfully stopped contains contraband, may conduct as thorough a warrantless search as a magistrate could authorize. The Court reasoned:
For constitutional purposes, there is no difference between on the one hand, seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment and the Louisiana Constitution. Carrol v. U.S., 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); United States v. Ross, supra; State v. Chaney, 423 So.2d 1092 (La.1983).
Furthermore, prior Louisiana jurisprudence has held that a search warrant is not necessary where there is probable cause to search an automobile for contraband or evidence of a crime and there are exigent circumstances requiring an immediate search. State v. Chaney, supra; State v. Guzman, 362 So.2d 744 (La.1978).
Exigent circumstances has been defined as the impracticability of obtaining a warrant due to the possibility that the car could be moved either by its occupants if not arrested, or by someone else. An immediate warrantless search is therefore constitutionally permissible when "the car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained." State v. Chaney, supra.

Tatum at 31-32.
In support of its contention, the State cites State v. Nieto, 395 So.2d 733 (La.1981), which it contends is very similar to the fact situation here. The police had received a tip overheard by a C.I. that "Alfred" was going to visit "Danny" at a certain address at a certain time in order to purchase a large amount of drugs. The officers set up a surveillance of the address and observed a car pull up and park near the address at the time indicated by the C.I. The driver of the car entered the residence empty-handed. While the driver was inside, the officers ran the license plate number of the car and found it was registered to Alfredo Nieto. During the surveillance, the officers observed what appeared to be other drugs transactions occurring at that address. When the driver of the car reappeared over an hour later, he was carrying a bag. The officers followed *1243 him a short distance and then stopped and arrested him. They searched a bag found on the front seat of the car and found drugs inside the bag. On review of the defendant's conviction, the Court found that the corroborated C.I.'s tip gave the officers probable cause to stop and arrest the defendant, and it also gave the officers probable cause to believe the bag contained contraband.
Here, by contrast, the officers were not able to establish that either of the men in the Cadillac was the "Raul" mentioned in the tip. In addition, unlike the officers in Nieto, the officers here did not observe any other activity with respect to the Bruxelles Street apartment which could have been drug transactions. Although the factors set forth above would support a finding of reasonable suspicion of criminal activity to stop the defendants, it does not appear that these factors would support a finding that it was more probable than not that the glove compartment contained contraband or the evidence of a crime. Thus, the trial court did not err by so finding.
In the alternative, the State argues that the search of the glove compartment was justified as part of a "protective sweep" of the car in connection with the investigatory stop. It does not appear that this argument was raised before the trial court. Paragraph B of C.Cr.P. art. 215.1 provides:
When a law enforcement officer has stopped a person for questioning pursuant to this Article and reasonably suspects that he is in danger, he may frisk the outer clothing of such person for a dangerous weapon. If the law enforcement officers reasonably suspects the person possesses a dangerous weapon, he may search the person.
See also State v. Hunter, 375 So.2d 99 (La. 1979); Johnson. The State argues that because the defendants were stopped in a high-crime area (the Lafitte Project) and were suspected of being involved in a cocaine deal, the officers were justified in conducting a patdown of them and a protective sweep of the car. Such reasoning was upheld by this court in State v. Archie, 477 So.2d 864 (La. App. 4th Cir.1985). In Archie, the police stopped a car with a bent license plate. The officers ordered the car's occupants to exit the car, and the passenger suddenly ducked down and placed something under the seat. After the occupants were removed from the car, one officer looked under the seat and found a loaded gun. The defendant was convicted of being a felon in possession of a firearm, and on appeal he argued that the search under the seat exceeded the scope of the traffic stop. This court disagreed, citing Michigan v. Long, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), which extended a Terry search to encompass a protective search of an automobile from which a defendant was seized "recognizing that roadside encounters may be especially hazardous to police." In discussing Long, this court noted:
The [U.S. Supreme Court] held that a "search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based upon specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the officer to believe that the suspect is dangerous and the suspect may gain immediate control of weapons."

Archie, at 865.
Noting that the defendant had been stopped in a high-crime area and was seen trying to hide something under the seat, this court further stated: "[The officers] were not obliged to let him reenter the car without checking to see what he had placed under the seat considering the real possibility that they might be in danger." Id. at 865-866.
Likewise, in State v. Davis, 612 So.2d 256 (La.App. 4th Cir.1992), this court upheld a similar search of a car. The car had been stopped for speeding and the driver was seen making a motion as if he was putting something under the seat. Citing Archie, this court upheld the officers' search under the seat and seizure of contraband found under the seat.
Here, the officers saw Scull place something in the glove compartment. However, unlike the cases cited above, this action was not taken as a result of the defendants' stop *1244 by the police. Indeed, it appears that the officers saw Scull place the object in the glove compartment when they first came upon the Cadillac parked in front of 2225 Lafitte and there is no indication that the defendants were aware at that time that they were about to be stopped, unlike in Archie and Davis. There was no indication here, as in Archie and Davis, that Scull was trying to hide something, possibly a weapon, as he was about to be stopped by the police. Thus, the considerations of the court in those cases are not valid in this case. In addition, here the State did not show that the officers feared that the object placed in the glove compartment was a weapon. Indeed, the officers who actually stopped the car did not testify at the suppression hearing, and the officer who testified did not indicate why the officers elected to search the glove compartment. Because the State has the burden of showing the reasons for a warrantless search and the State failed to show that the officers who stopped the defendants feared there was a weapon in the glove compartment, it does not appear that the trial court erred by suppressing the currency seized from the Cadillac.

III. The Search of 2727 ½ Bruxelles Street
The trial court also suppressed the evidence seized pursuant to the warrant issued for the Bruxelles Street apartment. In State v. James, 581 So.2d 349 (La.App. 4th Cir.1991), this court set forth the standard of review of the issuance of a search warrant:
C.Cr.P. art. 162 provides that a search warrant may be issued "only upon probable cause established to the satisfaction of the judge, by the affidavit of a credible person, reciting facts and establishing the cause for the issuance of the warrant." The Louisiana Supreme Court has held that probable cause exists when:
the facts and circumstances within the affiant's knowledge, and those of which he has reasonably trustworthy information, are sufficient to support a reasonable belief that evidence [or] contraband may be found at the place to be searched.

State v. Duncan, 420 So.2d 1105 (La.1982). See also State v. Roebuck, 530 So.2d 1242 (La.App. 4th Cir.1988), writ denied 531 So.2d 764 (La.1988); State v. Scott, 499 So.2d 1248 (La.App. 4th Cir.1986). The facts which form the basis for the probable cause to issue a search warrant must be contained "within the four corners" of the affidavit. Duncan; Roebuck. A magistrate must be given enough information to make an independent judgment that probable cause exists for the issuance of the warrant. State v. Manso, 449 So.2d 480, 482 (La.1984), cert. denied, Manso v. Louisiana, 469 U.S. 835, 105 S.Ct. 129, 83 L.Ed.2d 70 (1984).
In its review of a magistrate's finding of probable cause, the appellate court must determine whether the "totality of circumstances" set forth in the affidavit is sufficient to allow the magistrate
to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband ... will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclu[ding] that probable cause existed." Illinois v. Gates, 462 U.S. 213, 238-239, 103 S.Ct. 2317 [2332, 76 L.Ed.2d 527] (1983). (citations omitted)
See also Manso; Roebuck.

James, at 353-354.[1]
The affidavit for the search warrant for the Bruxelles Street apartment included not only the information received from the C.I. and the observations of the officers, but it also included the facts that the money was *1245 found in the glove compartment of the Cadillac and that the money had been in contact with a controlled dangerous substance. However, because it appears that the money was unlawfully seized, the use of these two factors to support a finding of probable cause tainted the warrant. Without these two factors, it does not appear that there was probable cause to believe that the apartment contained contraband. It is true that a car with Florida license plates came to the apartment, but it was never established that one of the men was "Raul" who was supposedly supplying the cocaine. Indeed, there is no indication in the affidavit that the tip indicated that a shipment of cocaine was pending. The affidavit merely states that "Raul" would bring cocaine from Florida and store it at the apartment. In addition, there is no basis of knowledge by the C.I. that there was cocaine at the apartment. The C.I. had only purchased cocaine from the Lafitte Street address; the officer testified that the C.I. had never been to the Bruxelles apartment. Without the additional fact that the money found in the Cadillac's glove compartment had been in contact with contraband, there does not appear to have been probable cause for the issuance of the warrant.
Finally, the State argues that even if affidavit lacked probable cause for the issuance of the warrant, the search still should be upheld due to the "good faith" exception to the warrant requirement because the officers believed that the warrant was good when they executed it. See United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). In Leon, the Court noted that evidence seized pursuant to a warrant for which there was no probable cause to support it need not be suppressed if the officers who executed the warrant believed the warrant was validly issued. The Court listed four instances, however, where suppression remains the appropriate remedy for a search pursuant to an invalid warrant: (1) the affiant misled the magistrate by including in the affidavit misleading statements which the affiant knew were false or which he would have known were false except for his reckless disregard of the truth; (2) the magistrate abandoned his neutral and detached role; (3) the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or (4) the warrant was so facially deficient that it could not be presumed to be valid. Id. at 923, 104 S.Ct. at 3421.
It is true that the four instances listed in Leon are not present in this case. It is also true that the officer may have believed that there was probable cause for the issuance of the warrant. Indeed, all the facts listed in the affidavit may have supplied the requisite probable cause for the issuance of the warrant. However, a critical factor which supplied the probable cause, the contraband-tainted money, was gleaned as a result of an unlawful search. The purpose of the exclusionary rule is to deter unlawful conduct. Without this factor, there would not have been probable cause for the issuance of the warrant. To allow its use, or to uphold a search based upon its use, would appear to defeat the purpose of the exclusionary rule. Thus, it appears that the good faith exception should not be applied to this case.
The trial court is vested with great discretion when ruling on motion to suppress. State v. Williams, 594 So.2d 476, 479 (La. App. 4th Cir.1992). Here, it does not appear that the trial court abused its discretion by suppressing the evidence in this case. Therefore, the trial court's rulings are affirmed.
AFFIRMED.
NOTES
[1] Recently, in State v. Barrilleaux, 620 So.2d 1317 (La.1993), the Court somewhat relaxed the "four corners" requirement. However, it appears that this exception should be limited to cases where, for some good reason, additional information known by the affiant is not placed in the affidavit but is orally relayed to the magistrate prior to the signing of the warrant. Id. at 1321.