772 So.2d 808 (2000)
STATE of Louisiana
v.
Derek M. JACKSON.
No. 99-KA-2993.
Court of Appeal of Louisiana, Fourth Circuit.
October 18, 2000.
*809 Harry F. Connick, District Attorney, Leslie P. Tullier, Assistant District Attorney, New Orleans, LA, Counsel for Plaintiff/Appellee.
Christopher A. Aberle, Louisiana Appellate Project, Mandeville, LA, Counsel for Defendant/Appellant.
Court composed of Judge CHARLES R. JONES, Judge MIRIAM G. WALTZER and Judge PATRICIA RIVET MURRAY.
WALTZER, Judge.

STATEMENT OF CASE
Derek M. Jackson was charged by bill of information on 5 October 1998 with possession of cocaine, a violation of La. R.S. 40:967(C)(2). He pled not guilty at his arraignment on 8 October 1998. Following a hearing on 28 October 1998, the trial court found probable cause and denied Jackson's motion to suppress the evidence. On 17 November 1998, Jackson withdrew his not guilty plea and entered a plea of guilty as charged pursuant to State v. Crosby, 338 So.2d 584 (La.1976). That same day, the State filed a multiple bill of information charging Jackson as a second felony offender. He pled guilty to the multiple bill and the court sentenced him pursuant to La. R.S. 15:529.1 to eight years at hard labor, with credit for time served, sentence to run concurrent with any other parole violations.

STATEMENT OF FACTS
NOPD Officer Robert Ferrier testified at the hearing that at approximately 12:15 a.m. on 1 October 1998, he and his partner Officer Kyle Henrick received information *810 from a registered confidential informant that "Derek", an African-American male wearing a striped blue, green and white shirt, blue jeans, and listening to a Walkman radio, was selling drugs in the 600 block of Soraparu Street. Shortly thereafter, the officers relocated to that area in an unmarked vehicle, and observed the defendant, fitting the description provided by the informant, walking down the street. As the officers approached the defendant, he walked fast. The officers exited their vehicle, and as they approached the defendant and identified themselves as police officers, he appeared startled, and "discreetly" dropped a white object to the ground in front of a porch. Officer Henrick retrieved the object, which was nine rocks of cocaine. The defendant was arrested for distribution of crack cocaine.
Under cross-examination Officer Ferrier admitted that he and his partner did not conduct any surveillance of the area, nor did they see the defendant engage in any suspicious behavior or drug-related activity.

ERRORS PATENT
A review for errors patent on the face of the record reveals none.
ASSIGNMENT OF ERROR: The trial court erred in denying the motion to suppress the evidence.
The defendant contends that the officers had no reasonable suspicion to stop him, even on the basis of information received from a confidential informant, because the police relied upon an uncorroborated tip. Hence, the evidence was illegally obtained and should have been suppressed.
Warrantless searches and seizures fail to meet constitutional requisites unless they fall within one of the narrow exceptions to the warrant requirement. State v. Edwards, 97-1797, p. 11 (La.7/2/99); 750 So.2d 893, 901 cert. denied, Edwards v. Louisiana, 528 U.S. 1026, 120 S.Ct. 542, 145 L.Ed.2d 421 (1999). On trial of a motion to suppress, the State has the burden of proving the admissibility of all evidence seized without a warrant. LSA-C.Cr.P. art. 703(D).
LSA-C.Cr.P. art. 215.1(A) provides:
A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
Reasonable suspicion to stop is something less than the probable cause required for an arrest, and the reviewing court must look to the facts and circumstances of each case to determine whether the detaining officer had sufficient facts within his knowledge to justify an infringement of the suspect's rights. State v. Littles, 98-2517, p. 3 (La.App. 4 Cir. 9/15/99); 742 So.2d 735, 737. Evidence derived from an unreasonable stop will be excluded from trial. State v. Benjamin, 97-3065, p. 3 (La.12/1/98), 722 So.2d 988, 989. In assessing the reasonableness of an investigatory stop, the court must balance the need for the stop against the invasion of privacy that it entails. State v. Harris, 99-1434, pp. 2-3 (La.App. 4 Cir. 9/8/99); 744 So.2d 160, 162. The totality of the circumstances must be considered in determining whether reasonable suspicion exists. State v. Oliver, 99-1585, p. 4 (La.App. 4 Cir. 9/22/99); 752 So.2d 911, 914. The detaining officers must have knowledge of specific, articulable facts, which, if taken together with rational inferences from those facts, reasonably warrant the stop. State v. Dennis, 98-1016, p. 5 (La.App. 4 Cir. 9/22/99), 753 So.2d 296, 299. In reviewing the totality of the circumstances, the officer's past experience, training and common sense may be considered in determining if his inferences from the facts at hand were reasonable. State v. Cook, 99-0091, p. 6 (La.App. 4 Cir. 5/5/99); 733 So.2d 1227, 1232. Deference should be given to the experience of the officers who were present at the time of the incident. State v. Ratliff, 98-0094, p. 3 (La.App. 4 Cir. 5/19/99); 737 So.2d 252, 254, writ denied, 99-1523 (La.10/29/99); 748 So.2d 1160.
*811 A confidential informant may provide adequate information to establish probable cause for a warrantless arrest, so long as the basis for the information and the informant's reliability, when examined under the totality of circumstances, are established. Illinois v. Gates, 462 U.S. 213, 229-30, 103 S.Ct. 2317, 2327-28, 76 L.Ed.2d 527 (1983).
The question in this appeal is whether, based on the information received by the police from the registered confidential informant, the officers had reasonable suspicion to stop the defendant, in the absence of any apparent suspicious activity.
In State v. Hathaway, 411 So.2d 1074 (La.1982), police officers received information from a confidential informant who had previously supplied information leading to narcotics arrests and convictions. The officers were told that Joseph Woods, a known drug user, would be delivering a quantity of narcotics to an address in the 1200 block of South White Street. The officers immediately proceeded to the area, and saw Woods talking on a street corner. As Woods walked away, he "was turning around and looking up and down the street as to determine if anyone was watching his actions." Hathaway, supra, at 1076. The officers drove to the 1200 block of South White Street, where Woods was observed talking with another known narcotics user, and Anthony Hathaway. At that point, the officers approached the three men. The Supreme Court held that the reliable informant's tip, coupled with the officers' observations of Woods walking down the street "in a furtive manner," and his meeting with another known narcotics user, provided reasonable suspicion for an investigatory stop.
Of similar import is State v. Sterling, 94-0794 (La.App. 4 Cir. 7/27/94); 641 So.2d 696, writ denied, 94-2213 (La.11/18/94); 646 So.2d 379, reconsideration denied 94-2213 (La.12/16/94), 648 So.2d 385, where police received information from a reliable confidential informant who had provided information in the past that had led to the arrests of persons engaged in the illegal trafficking of narcotics in New Orleans that Ralph Sterling was supplying drugs on a wholesale level in the Iberville Housing Project. The informant related that Sterling kept the bulk of his drugs at his mother's residence at 2755 Toulouse Street, then transported them in the late afternoon to 1314 Bienville Street, his girlfriend's apartment, which defendant used as a distribution outlet. The informant said that Sterling drove a 1982 tan Crown Victoria, and that he had personally made buys from Sterling within the past seventy-two hours. An officer testified that the Bienville Street location was known to be a "high drug trafficking area." During a surveillance of the Toulouse Street residence, an officer observed a man, later identified as Sterling, leave the residence carrying a brown paper bag. Sterling entered a 1982 tan Ford Crown Victoria and drove into the project, where he stopped near 1314 Bienville Street. Sterling got out of his vehicle, looked back and forth, reached into the vehicle and picked up the paper bag, and walked to 1314 Bienville Street. He opened the front door with a key, entered the residence, placed the brown paper bag inside, and returned to his vehicle, where police effected an investigatory stop. Prior to the stop, police had determined through computer records that Sterling had prior arrests for narcotics. This court found that the totality of the circumstances warranted a reasonable suspicion of criminal activity, justifying the investigatory stop.
In State v. Scull, 93-2360 (La.App. 4 Cir. 6/30/94); 639 So.2d 1239, writ denied, 94-2058 (La.11/11/94); 644 So.2d 391, a reliable confidential informant told police that "Raul" imported cocaine from Florida, stored it at a Bruxelles Street apartment, and sold it from a Lafitte Street address. Police established a surveillance on Bruxelles Street, and observed a Cadillac with Florida license plates drive past the apartment and park around the corner, although there were parking spaces closer to *812 the apartment. Two men exited the Cadillac, one carrying a small garbage bag, and entered the apartment. Fifteen minutes later, the two left and drove to the Lafitte Street address. When the officers observed one of the men place something into the Cadillac's glove compartment, officers approached and made an investigatory stop of the men. This court held that the circumstances warranted a reasonable suspicion of criminal activity. Scull, supra at p. 4, 639 So.2d at 1242.
In State v. Mims, 98-2572 (La.App. 4 Cir. 9/22/99); 752 So.2d 192, the police received information from a confidential informant that defendant, known as "Head", was dealing cocaine on St. Louis Street between Bourbon and Burgundy Streets. The informant described the individual as wearing a white T-shirt and blue jeans, with a brace on his left leg. The informant also stated that defendant concealed the drugs near the brace on his leg, and that defendant walked with a limp. Within fifteen minutes of the tip, the officers observed an individual matching the description given by the informant walking in the 800 block of St. Louis Street. The officers exited their vehicle and informed the defendant that he was under investigation for possible narcotics violations. The officers performed a frisk or pat down of the defendant and felt several rock-like objects along his left leg. The officer testified that from past experience, he recognized the objects as narcotics, and subsequently retrieved cocaine and a small bag containing powdered cocaine from the defendant's leg near his brace. This court reversed the trial court's denial of the motion to suppress, concluding that since the officers neither observed any suspicious behavior by the defendant which would justify a belief he was dealing drugs nor did they observe any suspicious behavior from a safety standpoint that would require a pat-down, the stop was unjustified.
In this case, unlike Hathaway, where the defendant was a known drug user meeting with another drug user, and walking in a "furtive manner", the officers had no information as to any drug use by the defendant at the time they stopped him, nor did the officer testify he observed any suspicious behavior by the defendant. Additionally, in Sterling and Scull, unlike this case, the officers set up a surveillance of the defendants' activities which corroborated the confidential informants' report of criminal activities. Moreover, the testifying officer in Sterling noted that the defendant's activity was observed in a "high drug trafficking area." There was no such testimony in this case.
The facts in this case are closer to those in the Mims case. In the case at bar, the informant identified the defendant by first name only, supplied an accurate clothing description and location. Within a short time of receiving the tip, the officers observed the defendant walking on Soraparu Street, listening to a Walkman radio, wearing a striped blue, green and white shirt, all as the informant reported. However, as in Mims, the officers neither surveilled the area nor witnessed the defendant engaging in drug activities or otherwise suspicious behavior.
In the absence of any suspicious conduct or corroboration of information from which the police could conclude that the informant's allegation of criminal activity was reliable, we cannot find that the State met its burden to justify the stop.

CONCLUSION
For the foregoing reasons, the defendant's convictions and sentences are vacated and the case is remanded to the trial court for further proceedings consistent with this opinion.
CONVICTIONS AND SENTENCES VACATED. CASE REMANDED.