11 KIRBY, Judge.
The defendant, Mertis Washington, was charged by bill of information with possession of crack cocaine, a violation of La. R.S. 40:967. He was arraigned on September 11, 1998, and pled not guilty. He filed a motion to suppress evidence, which was denied October 23, 1998. On August 11, 1999, a six member jury found defendant guilty as charged. The State filed a multiple bill accusing him of being a third offender. The defendant pled guilty to the multiple bill and was sentenced to forty months at hard labor. The defendant now appeals.
A review of the record for errors patent reveals none.
Detective Paul Noel testified that he was on routine patrol with his partner Ronnie Stevens in the 8500 block of Hickory Street at 1:00 a.m. on September 1, 1998. He saw the defendant sitting on the steps of an abandoned house in the very spot where he had made many arrests in the past. The area is near a bar and people stand outside drinking from open containers. The police often receive complaints from the neighbors. The officers put on their lights and decided to stop the defendant to ask why he was sitting on the steps of an abandoned house. The defendant saw the police, looked startled, stepped off of the steps, pitched a small object to the sidewalk, and started to walk away. Stevens detained him while Noel ^picked up the object, a crack pipe. The defendant was then placed under arrest. A search incident thereto produced a piece of crack cocaine.
The defendant took the stand and admitted to convictions for forgery and burglary. He said that on the morning of September 1, 1998, he and his wife were leaving the Bus Stop Lounge to return to their house in the next block. According to defendant, the police pulled up and two youngsters ran away. The defendant went to get his wife a cold drink to eat with her supper. The police stopped him, and the defendant told them to search him. The officers searched the area and found the pipe and the crack. The defendant denied possessing either.
In the first assignment of error, the defendant argues the trial court erred in denying the motion to suppress evidence.
It has long been held that property cannot be seized legally if it was abandoned pursuant to an infringement of the person’s rights. However:
if ... property is abandoned without any prior unlawful intrusion into a citizen’s right to be free from government interference, then such property may be lawfully seized. In such cases, there is no expectation of privacy and thus no violation of a person’s custodial rights.
State v. Belton, 441 So.2d 1195, 1199 (La.1983), cert. den. Belton v. Louisiana, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). See also State v. Britton, 93-1990 (La.1/27/94), 633 So.2d 1208; State v. Tucker, 626 So.2d 707 (La.1993), opinion reaffirmed and reinstated on rehearing by 626 So.2d 720 (La.1993); State v. Dennis, 98-1016 (La.App. 4 Cir. 9/22/99), 753 So.2d 296; State v. Laird, 95-1082 (La.App. 4 Cir. 5/8/96), 674 So.2d 425. As noted by the Court in Britton: “the police do not need probable cause to arrest or reasonable suspicion for an investigatory stop every time they approach a citizen in a *1255 public place.” Britton, 93-1990 at p. 2, 633 So.2d at 1209.
13An “actual stop” occurs when an individual submits to a police show of authority or is physically contacted by the police. State v. Tucker, supra. An “imminent actual stop” occurs when the police come upon an individual with such force that, regardless of the individual’s attempts to flee or elude the encounter, an actual stop of the individual is virtually certain. Id. The Supreme Court listed the following factors to be considered in assessing the extent of police force employed in determining whether that force was “virtually certain” to result in an “actual stop” of the individual: (1) the proximity of the police in relation to the defendant at the outset of the encounter; (2) whether the individual has been surrounded by the police; (3) whether the police approached the individual with their weapons drawn; (4) whether the police and/or the individual are on foot or in motorized vehicles during the encounter; (5) the location and characteristics of the area where the encounter takes place; and (6) the number of police officers involved in the encounter. Id. An actual stop is imminent “when the police come upon an individual with such force that, regardless of the individual’s attempts to flee or elude the encounter, an actual stop of the individual is virtually certain.” Tucker, 626 So.2d at 712.
Here, we do not find that there was an actual immediate stop at the point when the defendant threw down the pipe. At that point, all the officers had done was to shine their light. The two officers had not surrounded the defendant, nor had they drawn their weapons. However, once the defendant threw down the pipe, the officers had reasonable suspicion for a stop.
In State v. Sneed, 95-2326, p. 3 (La.App. 4 Cir. 9/11/96), 680 So.2d 1237, 1238, unit denied 96-2450 (La.3/7/97), 689 So.2d 1371, this court discussed the standard for determining if officers have reasonable suspicion to support an investigatory stop:
14An individual may be stopped and questioned by police if the officer has a reasonable suspicion that the person “is committing, has committed, or is about to commit an offense.” La.Code Crim. Proc. Ann. art. 215.1. While “reasonable suspicion” is something less than the probable cause needed for an arrest, it must be based upon particular articu-lable facts and circumstances known to the officer at the time the individual is approached. State v. Smith, 94-1502, p. 4 (LaApp. 4th Cir.1/19/95), 649 So.2d 1078, 1082. The officer’s past experience, training and common sense may be considered in determining if the inferences drawn from the facts presented were reasonable. State v. Jackson, 26,-138 (La.App.2nd Cir. 8/17/94), 641 So.2d 1081, 1084.
See also State v. Smiley, 99-0065 (La.App. 4 Cir. 3/3/99), 729 So.2d 743, writ denied, 99-0914 (La.5/14/99), 743 So.2d 651; State v. Allen, 95-1754 (La.9/5/96), 682 So.2d 713.
 In this case, when the officers shone the light on the defendant, he appeared startled, threw the pipe to the ground and started to walk away. We find that the officers had reasonable suspicion to stop the defendant at that time. Once they picked up the pipe, they had probable cause to arrest the defendant.
In State v. Simms, 571 So.2d 145, 148-149 (La.1990), the court made a full and comprehensive statement of the elements and qualities of probable cause, as follows:
Probable cause to arrest exists when the facts and circumstances within the officer’s knowledge are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime. Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); State v. Wilson, 467 So.2d 503 (La.1985). The determination of probable cause, although requiring something more than bare suspicion, does not require evidence sufficient to support a conviction. Probable cause, as the very *1256 name implies, deals with probabilities. Brinegar v. United States, 388 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). The determination of probable cause, unlike the determination of guilt at trial, does not require the fine resolution of | .¡conflicting evidence that a reasonable doubt or even a preponderance standard demands, and credibility determinations are seldom crucial in deciding whether the available evidence supports a reasonable belief that the person to be arrested has committed a crime. Gerstein v. Pugh, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); State v. Rodrigue, 437 So.2d 830 (La.1983). The determination of probable cause involves factual and practical considerations of everyday life on which average men, and particularly average police officers, can be expected to act. State v. Ogden and Geraghty, 391 So.2d 434 (La.1980).
A search of the defendant is legal if there is probable cause for his arrest. State v. Parker, 622 So.2d 791 (La.App. 4 Cir.1993), unit denied, 627 So.2d 660 (La. 1993). Here, the cocaine was found in a valid search pursuant to the arrest.
The trial court did not err in denying the motion to suppress evidence. This assignment is without merit.
In the second assignment of error, the defendant argues that the trial court erred in allowing the State to impeach defendant’s testimony with evidence of prior alleged arrests and a conviction. As set out above, the defendant stated at the start of his testimony that he had been convicted of forgery in 1982 and had pled guilty to burglary of an automobile in 1986. He said he had been out of jail for eight years, six months, and a few days. Later on direct, he said he had been arrested for trespassing on St. Charles Avenue and that he had had to pay $1200.00 to get out of jail. On cross-examination, he denied any knowledge of a conviction for being a convicted felon in possession of a firearm in 1985. The State produced a copy of the 1986 burglary conviction, which showed that a jury found the defendant guilty of this charge. The State asked the defendant if he had pled guilty to the burglary charge as he stated in his earlier testimony, then how could he have been found guilty as charged by a jury of his peers? The defendant responded he |fihad not committed the crime so he had no reason to plead guilty. The State then asked him if he remembered a June 1998 arrest for drug paraphernalia, since he remembered the trespassing arrest. The defense objected, and the court overruled, finding that the defendant had opened the door. The State then asked him whether he remembered being arrested for resisting arrest and public drunkenness in 1992, battery in 1991, and carrying a concealed weapon in 1990. He said he remembered the 1991 arrest, but did not remember the other two. The State then produced the defendant’s rap sheet; the defendant objected; and the trial court sustained the objection. The State proceeded to ask if he remembered an arrest in 1985 for being a convicted felon in possession of a firearm, a 1985 arrest for possession of cocaine, and a 1985 arrest for aggravated assault. The court on its own motion then ruled that the defendant had only opened the door concerning arrests after his release from his last prison term. The defendant now argues that the State acted improperly in asking the above questions.
La. C.E. art. 609.1 provides:
A. General criminal rule. In a criminal case, every witness by testifying subjects himself to examination relative to his criminal convictions, subject to limitations set forth below.
B. Convictions. Generally, only offenses for which the witness has been convicted are admissible upon the issue of his credibility, and no inquiry is permitted into matters for which there has only been an arrest, the issuance of an arrest warrant, an indictment, a prosecution, or an acquittal.
*1257 C. Details of convictions. Ordinarily, only the fact of a conviction, the name of the offense, the date thereof, and the sentence imposed is admissible. However, details of the offense may become admissible to show the true nature of the offense:
(1) When the witness has denied the conviction or denied recollection thereof;
|7(2) When the witness has testified to exculpatory facts or circumstances surrounding the conviction; or
(3) When the probative value thereof outweighs the danger of unfair prejudice, confusion of the issues, or misleading the jury.
D. Effect of pending post-conviction relief procedures. The pendency of an appeal or other post-conviction relief procedures does not render the conviction inadmissible, but may be introduced as bearing upon the weight to be given the evidence of the conviction.
E. Effect of pardon or annulment. When a pardon or annulment, based upon a finding of innocence, has been granted, evidence of that conviction is not admissible to attack the credibility of the witness.
F. Juvenile adjudications. Evidence of juvenile adjudications of delinquency is generally not admissible under this Article, except for use in proceedings brought pursuant to the habitual offender law, R.S. 15:529.1.
Therefore generally, evidence of arrests for which there has not been a conviction is not admissible. However, La. C.E. art. 611B sets forth, in pertinent part, the proper scope of cross-examination: “A witness may be cross-examined on any matter relevant to any issue in the case, including credibility.” In this case, the defense concedes that once the defendant testified that he had not been in jail since he was released from prison in 1990, cross-examination was proper on any arrest after that time.
As to the questions concerning the 1985 arrests, there is a serious question as to whether the defense made a timely objection under La.C.Cr.P. art. 841. The trial court in fact on its own motion told the State it could only ask questions concerning arrests after the defendant’s release from jail. The only testimony that the jury heard regarding those arrests was that the defendant did not remember the arrest for being a convicted felon in possession of a firearm. To the extent that the | RState erred in asking about the 1985 arrests, any error was harmless. State v. Tolliver, 97-1220 (La.App. 5 Cir. 6/30/98), 714 So.2d 1273, imit denied, 98-2057 (La.11/25/98), 729 So.2d 577. The jury knew the defendant had an extensive criminal record, and the additional evidence could hardly have prejudiced him.
This assignment is without merit.
For these reasons, we affirm the defendant’s conviction and sentence.
AFFIRMED.